## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER PAYNE,** | **CIVIL ACTION** |
| **Plaintiff** | |
| **VERSUS** | **NO.  24-1857** |
| **HAMMOND CITY,** | **SECTION: "E" (3)** |
| **Defendant** | |

### ORDER AND REASONS

Before the Court is a motion to dismiss filed by Defendant City of Hammond ("Defendant").[1] Plaintiff Jennifer Payne ("Plaintiff") filed an opposition.[2] Defendant filed a reply.[3]

### BACKGROUND

The following facts are taken from Plaintiff's amended complaint.[4] In July of 2000, Plaintiff began her full-time employment with Defendant, through the Hammond Police Department ("HPD"), as a female communications officer.[5] Three years later, Plaintiff became a patrol officer.[6] In 2017, Plaintiff was promoted to Sergeant.[7] Plaintiff was promoted to Lieutenant in February of 2022.[8] Plaintiff alleges she had "ongoing, severe back problems that eventually required a lumbar fusion."[9] Plaintiff's back problems allegedly qualified her as disabled.[10] Plaintiff alleges she "was qualified for her job as

---

[1] R. Doc. 29.
[2] R. Doc. 31.
[3] R. Doc. 34.
[4] R. Doc. 22.
[5] *Id.* at ¶ 9.
[6] *Id.* at ¶ 10.
[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 11.
[10] *Id.*

evidenced by her promotion to Lieutenant."[11]

On September 22, 2022, while Plaintiff was at home with her husband, Plaintiff allegedly told her husband "that she felt that the Chief of Police had a personal vendetta against her."[12] Plaintiff allegedly told her husband that in 2020, the Chief of Police requested that Plaintiff send him nude photographs.[13] Plaintiff's husband, who also works for the HPD, allegedly reported the Chief of Police's request for nude photographs to HPD which prompted an investigation.[14]

In September of 2022, Plaintiff allegedly "requested" the "reasonable accommodation" that she be placed on light duty because of her disability.[15] Plaintiff alleges "her job as Lieutenant was all 'light duty.'"[16] Defendant allegedly denied Plaintiff's request for light duty and "forced" her "to begin sick leave which requires employees to remain in 'their place of confinement.'"[17] Plaintiff alleges that, after Defendant denied her light duty, Defendant contacted male officers and asked them to work light duty.[18] While on sick leave, Plaintiff alleges she was required to remain in her place of confinement.[19] Plaintiff alleges male officers on sick leave were not required to remain in their place of confinement and were "only required to notify HPD if their permanent address changes."[20]

Plaintiff alleges that, during her sick leave, she was allowed to leave her home only for "limited activities," such as for doctor visits and to purchase food, even though Plaintiff

---

[11] *Id.* at ¶ 12.
[12] *Id.* at ¶ 14.
[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 15.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at ¶ 16.
[20] *Id.*

provided Defendant with documentation from her private physician and the city physician recommending that Plaintiff be allowed to leave her place of confinement.[21] Plaintiff alleges Defendant did not respond to or acknowledge Plaintiff's physician's recommendation that Plaintiff be permitted to leave her place of confinement.[22] Plaintiff alleges that she provided Defendant with eight doctor notes providing reasons for why she "needed to leave her" place of confinement.[23] Plaintiff alleges that her requests were all denied while a male co-worker's request, consisting of one doctor's note stating why the male co-worker needed to leave his place of confinement, was approved.[24]

In January of 2023, while Plaintiff was out on sick leave, Plaintiff alleges she filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").[25] On May 3, 2023, Plaintiff alleges she filed a charge of discrimination with the EEOC.[26] The same day Plaintiff filed her charge of discrimination with the EEOC, Plaintiff was allegedly demoted from Lieutenant to Officer after the Chief of Police "contacted the office state examiners to inquire about demoting Plaintiff from Lieutenant to Officer."[27] Plaintiff alleges she was demoted in retaliation for filing an EEOC complaint.[28] Plaintiff alleges that, prior to her demotion, her "job duties and responsibilities as a Lieutenant were considered 'lite [sic] duty.'"[29]

On June 10, 2023, Plaintiff allegedly told her supervisor that she would be leaving her place of confinement to eat at a restaurant.[30] Even though "obtaining food" is allegedly

---

[21] *Id.* at ¶ 17.
[22] *Id.* at ¶ 18.
[23] *Id.* at ¶ 19.
[24] *Id.*
[25] *Id.* at ¶ 20.
[26] *Id.* at ¶ 21.
[27] *Id.* at ¶¶ 22-23.
[28] *Id.* at ¶ 23.
[29] *Id.* at ¶ 25.
[30] *Id.* at ¶ 24.

an approved reason for an HPD employee leaving their place of confinement while on sick leave, Plaintiff alleges her supervisor denied Plaintiff's request.[31]

Plaintiff alleges that she "subsequently" requested to return to light duty work and was told there was no availability for light duty work.[32] Plaintiff alleges she "was later told that male colleagues were asked to perform lite [sic] duty after her request was denied."[33] Plaintiff alleges that, during her employment with Defendant, Defendant "afforded" Plaintiff "different treatment" as compared to male and non-disabled employees holding an identical or similar job position as Plaintiff.[34]

Plaintiff alleges she was later terminated.[35]

Plaintiff has several claims against Defendant. In count one, Plaintiff brings a sex discrimination claim and a retaliation claim under Title VII of the Civil Rights Act ("Title VII").[36] In count two, Plaintiff brings a disability discrimination claim under Title I of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[37] In count three, Plaintiff brings a disability discrimination claim under the Louisiana Employment Discrimination Law ("LEDL").[38] In count four, Plaintiff brings retaliatory demotion and discharge and wrongful termination claims under Title VII and the LEDL and a hostile work environment claim under Title VII, the ADA, and the LEDL.[39] Plaintiff seeks punitive damages and compensatory damages.[40]

---

[31] *Id.*
[32] *Id.* at ¶ 26.
[33] *Id.*
[34] *Id.* at ¶ 27.
[35] *Id.* at ¶ 13.
[36] *Id.* at ¶¶ 28-29.
[37] *Id.* at ¶¶ 30-41.
[38] *Id.* at ¶¶ 42-43.
[39] *Id.* at pp. 10-13.
[40] R. Doc. 22 at p. 13.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[41] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[44] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[45]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[46] However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[47] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires

---

[41] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[43] *Id.*
[44] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[45] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[46] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[47] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

the reviewing court to draw on its judicial experience and common sense."[48] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[49] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[50] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment."[51]

"The Supreme Court has rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constrict the rule of the pleadings.' Consequently, in employment discrimination cases, 'the ordinary rules of assessing the sufficiency of a complaint apply.' Consequently, 'an employment discrimination plaintiff need not plead a prima facie case' in order to survive a Rule 12 motion.'"[52] "When a federal court reviews the sufficiency of the complaint . . . its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claim is entitled to offer evidence to support the claims."[53]

## LAW AND ANALYSIS

### I.    Plaintiff is not entitled to punitive damages for her claims.

Defendant argues that Plaintiff is not entitled to punitive damages for any of her claims.[54] Plaintiff "requests that Defendants' Motion to Dismiss . . . be denied with the

---

[48] *Iqbal*, 556 U.S. at 679.

[49] *Cutrer v. McMillan*, 308 Fed. App'x 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).

[50] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).

[51] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).

[52] *Sandifer v. Donahoe*, No. 14-2523, 2015 WL 5552644, at *4 (E.D. La. Sept. 16, 2015) (internal citations omitted).

[53] *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[54] R. Doc. 29-1 at pp. 6-9.

exception of the claims for punitive damages which Plaintiff previously conceded were not allowed against the City of Hammond."[55] Given the agreement of the parties that Plaintiff does not have a claim for punitive damages against Defendant and the caselaw cited in Defendant's motion,[56] the Court will dismiss Plaintiff's claims for punitive damages on all claims.

## II.    Compensatory damages are not available for an ADA retaliation claim.

Defendant argues compensatory damages are not available for Plaintiff's ADA retaliation claim.[57] Although Plaintiff does not expressly bring an ADA retaliation claim, she does seek "[c]ompensatory damages as a result of the discrimination based on sex and disability, wrongful termination, and/or retaliatory discharge" on all her claims.[58] Defendant concedes that the United States Court of Appeals for the Fifth Circuit "has not directly ruled on this issue," but cites district court cases, including a United States District Court for the Eastern District of Louisiana case, in support of its argument.[59] In opposition, Plaintiff cites an Eastern District of Louisiana order deferring a decision on a motion to dismiss a plaintiff's request for compensatory damages for an ADA retaliation claim in the hope that more clarity may be gained on the Fifth Circuit's opinion on this issue as the case progresses.[60] In reply, Defendant rests on the cases it cited in its motion.[61]

---

[55] R. Doc. 31 at pp. 1, 7.

[56] R. Doc. 29-1 at pp. 6-9.

[57] *Id.* at pp. 9-10.

[58] R. Doc. 22 at p. 13. It is unclear whether Plaintiff is asking for compensatory damages on her ADA retaliation claim (if Plaintiff is even bringing an ADA retaliation claim). In an abundance of caution, the Court analyzes this issue in the event that Plaintiff is seeking compensatory damages for an ADA retaliation claim.

[59] R. Doc. 22 at p. 13 (first citing *Rizzo v. Blues Mgmt., Inc.*, 2017 WL 549016, at *4 (S.D. Tex. Jan. 24, 2017); then *Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 878 (S.D. Tex. 2009); and then *Oliver v. Roehm Am., LLC*, 2022 WL 11763644, at *22 (E.D. La. Oct. 20, 2022)).

[60] R. Doc. 31 at pp. 2-3 (citing *Fox v. City of Hammond*, No. 24-1568, 2024 WL 5159301 (E.D. La. Dec. 18, 2024)).

[61] R. Doc. 34 at p. 2.

In *Miles-Hickman v. David Powers Homes, Inc.*, the United States District Court for the Southern District of Texas held that compensatory damages are not available for an ADA retaliation claim.[62] The court began its analysis by explaining that the ADA provides plaintiffs with a retaliation claim under 42 U.S.C. § 12203 and the remedies that the ADA provides for retaliation claims.[63] "Section 12203(c) provides that the remedies available for the violation of § 12203 in the course of a person's employment are those provided by 42 U.S.C. § 12117. Section 12117 provides that the available remedies are those provided by . . . 42 U.S.C. §§ 2000e–4, e–5, e–6, e–8, and e–9."[64] The only provision cited in § 12117 that potentially allows a plaintiff bringing an ADA retaliation claim to recover compensatory and punitive damages is § 2000e–5(g)(1).[65]

The *Miles-Hickman* court reviewed the existing opinions on the issue of whether a plaintiff bringing an ADA retaliation claim may recover compensatory damages and noted that circuit "and district courts are split" on the issue.[66] The *Miles-Hickman* court found the United States Court of Appeals for the Seventh Circuit's opinion in *Kramer v. Banc of American Securities, LLC*, particularly persuasive.[67] In *Kramer*, the court explained that "42 U.S.C § 1981a (a)(2), expands the remedies available under § 2000e–5(g)(1) in certain circumstances, to provide for compensatory and punitive damages,"[68] but "found that the plain text of § 1981a(1)(2) was clear"[69] that "compensatory and punitive damages are not available for"[70] ADA retaliation claims. "Citing *Kramer*, the Fourth Circuit has held in two

---

[62] 613 F. Supp. 2d at 877-79.
[63] *Id.* at 877.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.* at 877-79 (citing *Kramer v. Banc of Am. Securities, LLC*, 355 F.3d 961 (7th Cir. 2004)).
[68] 355 F.3d at 964.
[69] *Miles-Hickman*, 613 F. Supp. 2d at 878.
[70] *Kramer*, 355 F.3d at 965.

unpublished decisions that compensatory and punitive damages are not available for ADA retaliation claims. Furthermore, the majority of post-*Kramer* district court decisions have followed the holding in *Kramer*."[71] Cases that affirmed awards of compensatory damages for an ADA retaliation claim, however, were pre-*Kramer* and did not "expressly examin[e] whether compensatory damages are available under the ADA."[72] Based on the statutory text of "the ADA, the Civil Rights Act of 1964, and the Civil Rights Act of 1991, the Court [found] persuasive the reasoning in *Kramer*" and held that a plaintiff asserting an ADA retaliation claim cannot recover compensatory damages for that claim.[73]

This Court finds *Miles-Hickman* well-reasoned and adopts its analysis. Accordingly, in the event Plaintiff is bringing an ADA retaliation claim, the Court will dismiss Plaintiff's claim for compensatory damages on that claim.

## III. Plaintiff does not allege all elements necessary to state a Rehabilitation Act claim in count two.

To state a claim under the RA, Plaintiff must allege that she "(1) is an individual with a disability; (2) is otherwise qualified to perform the job; (3) was employed in a program or activity that receives federal funding; and (4) was discriminated against solely because of [her] disability."[74] Defendant argues Plaintiff has not alleged facts related to the third element because she has not alleged (1) that she was a federal employee; (2) that Defendant is a federal agency, employer, contractor, or grantee; or (3) that Defendant benefits from federal financial assistance or receives federal funds and used those funds

---

[71] *Miles-Hickman*, 613 F. Supp. 2d at 878 (internal citations omitted) (first citing *Bowles v. Carolina Cargo, Inc.*, 100 Fed. App'x 889 (4th Cir.2004); then *Rhoads v. Fed. Deposit Ins. Co.*, 94 Fed. App'x 187 (4th Cir. 2004); and then *Arredondo v. S2 Yachts*, 496 F.Supp.2d 831, 836 n.5 (W.D. Mich. 2007)).

[72] *Id.* (first citing *Muller v. Costello*, 187 F.3d 298, 315 (2d Cir. 1999); then *Foster v. Time Warner Ent. Co.*, 250 F.3d 1189, 1196-98 (8th Cir. 2001); and then *Salitros v. Chrysler Corp.*, 306 F.3d 562, 577 (8th Cir. 2002); and then *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999)).

[73] *Miles-Hickman*, 613 F. Supp. 2d at 878-79.

[74] *Handy v. Brownlee*, 118 Fed. App'x 850, 854 (5th Cir. 2004) (first citing *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997); then *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993)).

to employ Plaintiff.[75] Plaintiff does not respond to Defendant's arguments for dismissal of her RA claim.[76]

A review of Plaintiff's amended complaint confirms Defendant's position. While Plaintiff alleges that Defendant "discriminated against Plaintiff by denying her reasonable accommodations for her disabilities, including occupational stress, in violation of the" RA,[77] Plaintiff does not allege that she (1) was employed in a program that receives federal funding or (2) was a federal employee.[78] Thus, the Court will dismiss Plaintiff's claim(s) under the RA.

## IV.    Plaintiff's count four claim for retaliatory demotion under the Louisiana Whistleblower Statute is time-barred.

Defendant argues that Plaintiff's claim for retaliatory demotion under La. R.S. 23:967, the Louisiana Whistleblower Statute, is time-barred under the applicable one-year prescriptive period.[79] Because Plaintiff alleges she was demoted on May 24, 2023 and did not file suit until July 25, 2024, Defendant asserts that Plaintiff's retaliatory demotion claim under La. R.S. 23:967 is time-barred.[80] In opposition, Plaintiff argues that the relevant date for purposes of prescription is the date she was terminated, December 20, 2023, and that Plaintiff timely filed her complaint on July 25, 2024 within the one year prescriptive period. Plaintiff states "her claim for retaliatory demotion and discharge are not time barred as it was filed within one year of her termination."[81]

In reply, Defendant argues "that the one-year prescriptive period begins to run

---

[75] R. Doc. 29-1 at pp. 10-11.
[76] R. Doc. 31.
[77] R. Doc. 22 at ¶ 38.
[78] R. Doc. 22.
[79] R. Doc. 29-1 at pp. 11-12.
[80] *Id.*
[81] R. Doc. 31 at pp. 3-4.

from the date an injury or damage is sustained."[82] Because (1) the filing of an EEOC charge of discrimination does not toll, interrupt, or suspend prescription and (2) demotion and termination claims are distinct causes of action under La. R.S. 23:967, Defendant argues Plaintiff's La. R.S. 23:967 retaliatory demotion claim is prescribed.[83]

"Claims based on violation of the Louisiana Whistleblower Statute prescribe one year from the date when plaintiff knew of the violation."[84] Plaintiff was demoted on May 24, 2023, fired on December 20, 2023, and filed suit on July 25, 2024.[85] Because Plaintiff filed her complaint over a year after her date of demotion, the only theory that could make Plaintiff's retaliatory demotion claim timely is the "continuing tort doctrine." Under the continuing tort doctrine, "when tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated."[86] "A continuing tort is occasioned by the continual unlawful acts, not the continuation of the ill effects of an original, wrongful act."[87]

In the employment context, "The continuing violation theory typically applies to hostile work environment claims."[88] "Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice."[89]

---

[82] R. Doc. 34 at p. 3.
[83] Id.
[84] *Diaz v. Superior Energy Servs., LLC*, No. 07-2805, 2008 WL 3077071, at *11 (E.D. La. Aug. 4, 2008) (collecting cases).
[85] R. Doc. 22 at ¶ 22; R. Doc. 31 at p. 4; R. Doc. 1.
[86] *See Williams v. Otis Elevator Co.*, 557 Fed. App'x 299, 301 (5th Cir. 2014) (internal alteration omitted) (quoting *First Nat'l Bank v. Smith*, No. 29-350, p. 4 (La. App. 2 Cir. 4/2/97), 691 So.2d 355, 358).
[87] *Id.* (internal alterations and quotations omitted) (quoting *In re Med. Rev. Panel for the Claim of Moses*, No. 00-2643, p. 16 (La. 5/25/01), 788 So.2d 1173, 1183).
[88] *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 924 (E.D. La. 2017) (citing *Johnson v. Fluor Corp.*, 181 F. Supp. 3d 325 (M.D. La. 2016)).
[89] *Id.* (citing *Johnson*, 181 F. Supp. 3d 325).

This case features discrete events and is similar to *Notariano v. Tangipahoa Par. Sch. Bd.* In *Notariano*, the court found that the continuing tort doctrine did not apply to "discrete instances in which [the plaintiff] was denied promotions."[90] The plaintiff alleged her employer denied her a promotion in 2004, 2010, 2014, and 2016. The court held that "Each of Plaintiff's denied promotions are just such discrete and salient events" and dismissed the plaintiff's claims that arose outside the one-year prescriptive period.[91] Like in *Notariano*, the Plaintiff's demotion and firing in this case are "discrete and salient events."[92] Thus, the continuing tort doctrine does not apply in this case and the Court will dismiss Plaintiff's retaliatory demotion claim because it is untimely under the Louisiana Whistleblower Statute's one-year prescriptive period.[93]

## V.    The LEDL does not provide Plaintiff with the cause of action in count four for retaliation based on sex or disability discrimination.

Defendant argues Plaintiff failed to state a retaliation claim under the LEDL because "there is no cause of action for opposing sex or disability discrimination under the LEDL."[94] In opposition, Plaintiff claims that La. R.S. 51:2256 "authorizes a cause of action for retaliation under the LEDL" and argues that she properly alleged an LEDL retaliation claim.[95] In Reply, Defendant highlights that Plaintiff has not brought a claim under La. R.S. 51:2256.[96] Plaintiff does not cite La. R.S. 51:2256 in her amended complaint, but does cite it in her opposition to Defendant's motion to dismiss.[97]

The Court finds *Monette v. Walgreen Co.*, No. 24-1272, 2024 WL 4528156 (E.D.

---

[90] *Id.* at 924-25.
[91] *Id.*
[92] *Id.*
[93] *See Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575, 582 (M.D. La. 2002); *Haynes v. Georgia Pac., LLC*, No. 14-743, 2016 WL 5660470, at *10 n.8 (M.D. La. Sept. 29, 2016).
[94] R. Doc. 29-1 at pp. 12-13.
[95] R. Doc. 31 at pp. 4-5.
[96] R. Doc. 34 at p. 4.
[97] R. Doc. 22; R. Doc. 31 at pp. 4-5.

La. Oct. 18, 2024) helpful on this issue. In *Monette*, the Eastern District of Louisiana took an *Erie* guess as to whether the LEDL supplies a plaintiff with a "cause of action for retaliation for opposing racial discrimination under the LEDL."[98] The court began by explaining that the LEDL "provides a private cause of action for unlawful discrimination in employment."[99] The court stated that an individual alleging discrimination based on race, color, or, as in this case, sex, may "assert a cause of action directly under Chapter 23. But a cause of action for retaliation—discrimination based on an employee's opposition to or reporting of an employer's unlawful conduct—is a separate claim. The LEDL does not contain a general prohibition against retaliation."[100] Moreover, the court recognized that the LEDL's section on race- and sex-based discrimination does not provide a retaliation cause of action "against those who oppose race- [or sex-]based discrimination."[101] The court observed that other sections of the LEDL, however, "expressly prohibit retaliation against employees opposing such unlawful [age- or sickle cell-based] discrimination."[102] The fact that other sections of the LEDL expressly prohibit retaliation based on age- and sickle cell-based discrimination while the section on race- and sex-based discrimination does not "highlights that such a cause of action is not available for race-based discrimination under the LEDL."[103] Thus, the court concluded the plain text of the LEDL does not permit a "cause of action for retaliation for opposing racial discrimination under the LEDL."[104]

    The court also analyzed the argument that La. R.S. 51:2256 authorizes an LEDL

---

[98] No. 24-1272, 2024 WL 4528156 (E.D. La. Oct. 18, 2024).
[99] *Id.* at *3 (citing La. R.S. 23:303(A)).
[100] *Id.*
[101] *Id.*
[102] *Id.* (first citing La. R.S. 23:312(D); then La. R.S. 23:352(D)).
[103] *Id.* (citing La. Civ. Code art. 13).
[104] *Id.*

retaliation claim and rejected it.[105] The court reasoned that "By the plain language of [La. R.S. 51:2256], the amendment makes it unlawful for employers 'to conspire' to retaliate against employees who report illegal employment discrimination under the LEDL. It does not proscribe retaliation unless it includes a combination or agreement of two or more persons to retaliate."[106] The court concluded that while La. R.S. 51:2256 provides a cause action for conspiracy to retaliate against an individual who opposes a violation of the LEDL, it does not provide a general LEDL retaliation cause of action.[107]

Following its analysis, and due to lack of guidance from the Louisiana Supreme Court on this issue, the court reviewed Fifth Circuit and Louisiana appellate court opinions that agreed and disagreed with the conclusion that the LEDL does not provide a race-based retaliation cause of action.[108] The court determined that the Fifth Circuit and Louisiana appellate opinions finding that the LEDL allows for race- and sex-based retaliation claims are based on the "flawed premise" that "the LEDL, mirrors the federal antidiscrimination law, Title VII, and that they are similar in scope," rather than a statutory analysis.[109] The cases finding that the LEDL allows for race- and sex-based retaliation claims "reason that because the LEDL and Title VII are similar in scope, and because Title VII has a general retaliation cause of action under 42 U.S. Code § 2000e−3, the LEDL must have one too."[110] The court argued that this "argument fails to recognize the difference between a retaliation claim and a discrimination claim. Under Title VII, retaliation is found in a separate statutory provision, distinct from the sections on

---

[105] *Id.*
[106] *Id.* (citing *Liner v. Terminix Pest Control, Inc.*, No. 22-3698, 2023 WL 8005008, at *9 (E.D. La. Nov. 17, 2023)).
[107] *Id.*
[108] *Id.* at *4-5 (citing relevant opinions from the Fifth Circuit and Louisiana appellate courts).
[109] *Id.* (citing *Hartley v. Univ. of Holy Cross*, 370 So. 3d 1151, 1159 (La. App. 4th Cir. 2023)).
[110] *Id.*

discrimination."[111] The court explained that retaliation claims and discrimination claims address different harms and protect different interests.[112] Retaliation and discrimination claims under Title VII also have different proof requirements, elements, and legal standards.[113] As a result, retaliation and discrimination are separate causes of action. "[E]ven if the LEDL and Title VII are similar in scope as to discrimination claims, the same is not true with respect to the separate statutory claim of retaliation."[114]

The Court adopts the reasoning in *Monette* and holds that the LEDL does not permit Plaintiff to bring a sex-based retaliation claim against her employer.[115] Additionally, for the reasons stated in *Monette*, the Court finds that neither does the LEDL allow for a disability-based retaliation claim. Like La. R.S. 23:332, which prohibits sex-based discrimination, La. R.S. 23:323, which prohibits disability-based discrimination, does not "expressly prohibit retaliation against employees opposing . . . unlawful discrimination."[116] Thus, the *Monette* analysis applies to Plaintiff's LEDL disability-based retaliation claims.

The Court will dismiss Plaintiff's count four claims for sex-based retaliation and disability-based retaliation under the LEDL.

## VI. Plaintiff failed to exhaust her count four hostile work environment claims under Title VII and the ADA.

Defendant argues Plaintiff failed to plead facts demonstrating exhaustion of her hostile work environment claims based on sex and disability.[117] Defendant quotes

---

[111] *Id.* (first citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013); then *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010)).

[112] *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

[113] *Id.* (collecting cases).

[114] *Id.* (collecting cases).

[115] 2024 WL 4528156; *Glover v. Smith*, 478 Fed. App'x 236, 243-44 (5th Cir. 2012).

[116] *See Monette*, 2024 WL 4528156; *Callais v. United Rentals N. Am., Inc.*, No. 17-00312, 2017 WL 4706897, at *4 n.1  (M.D. La. Oct. 19, 2017).

[117] R. Doc. 29-1 at pp. 13-18.

Plaintiff's EEOC Charge of Discrimination ("EEOC Charge") to support this argument.[118]

In her EEOC Charge, Plaintiff alleges:

> I was hired on July 3, 2000, with my most recent position being police lieutenant. I am a person with a disability and my employer is aware of my disability. In January 2022 I returned to work after being out on an extensive medical leave for several months. In January 2022 I was promoted to my current rank of lieutenant and placed over records and communication division. In September 2022 I went out on medical leave. I wanted to return to work in December 2022, but I was told there was not light duty. During this time, my probation period was halted which means I would need to resume my probation period when I return to work. Chief Edwin Bergeron has approached me about taking disability retirement, and he once told me that I should wear a wig because I look like a man. I was informed by another officer that the chief stated that I took off too much. There are males who have taken significant time off and they were not disciplined, and they were granted light duty. The rules and policies have been applied differently to males in comparison to how they are applied to me regarding medical leave and time off. To date, I am currently out on medical leave. The Chief has issued me write-ups for abuse of sick leave and conduct unbecoming an officer. I have not been allowed to return to work because I was told there is no light duty for me. I believe I have been subjected to different terms and conditions of employment and disciplined because of my sex (female) in violation of Title VII . . . and I believe I was denied a reasonable accommodation, subjected to different terms and conditions of employment and disciplined because of my disability in violation of the [ADA].[119]

In the EEOC Charge, Plaintiff alleges she was hired on July 3, 2000.[120] Plaintiff alleges in January of 2022 she returned to work after being on medical leave for several months and was promoted to Lieutenant.[121] Plaintiff alleges in September of 2022 she began medical leave again.[122] Plaintiff alleges in December of 2022 she wanted to return to work but was told light duty was unavailable.[123] Plaintiff alleges Chief Edward Bergeron

---

[118] *Id.* at p. 16; R. Doc. 29-1.

[119] R. Doc. 29-2 at pp. 1-2. The Court may consider Plaintiff's EEOC Charge at the motion to dismiss stage. *Carter v. Target Corp.*, 541 Fed. App'x 413, 416-17 (5th Cir. 2013); *Beverly v. Al's Pest Control Serv., Inc.*, No. 23-752, 2023 WL 4366152, at *3 (E.D. La. July 6, 2023).

[120] R. Doc. 29-2 at p. 1.

[121] *Id.*

[122] *Id.*

[123] *Id.*

("Bergeron") then approached her to discuss Plaintiff's taking disability retirement.[124] Plaintiff alleges Bergeron told her she should wear a wig because she looks like a man.[125] Another officer allegedly told Plaintiff that Bergeron stated that Plaintiff took too much time off from work.[126] Plaintiff alleges she was treated differently compared to male colleagues that took medical leave and time off and that medical leave rules and policies were applied differently to her as compared to male colleagues.[127] At the time Plaintiff filed her EEOC Charge, she alleges she was on medical leave.[128] Plaintiff alleges Bergeron issued her "write-ups for abuse of sick leave and conduct unbecoming an officer."[129] Plaintiff alleges her employer discriminated against her on the basis of her sex and her disability.[130]

Defendant argues it could not have expected hostile work environment claims based on sexual harassment and disability to grow out of Plaintiff's allegations in her EEOC Charge.[131] Instead, Defendant claims Plaintiff's EEOC Charge makes allegations only pertaining to sex and disability discrimination.[132]

In opposition, Plaintiff argues her hostile work environment claims could have been reasonably expected to grow out of her sex and disability discrimination claims since Plaintiff was demoted and then fired after filing the EEOC Charge.[133] Plaintiff then quotes the language from her EEOC Charge and, in conclusory fashion, states that the facts alleged in the EEOC charge are "sufficient to put the Defendant on notice of her claims of harassment and/or hostile work environment and they reasonably arise from her EEOC

---

[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] *Id.*
[129] *Id.* at p. 2.
[130] *Id.*
[131] R. Doc. 29-1 at pp. 17-18.
[132] *Id.* at p. 16.
[133] R. Doc. 31 at pp. 6-7.

Charge."[134]

In reply, Defendant argues that discrimination claims are distinct from hostile work environment claims.[135] Due to the distinction between discrimination and hostile work environment claims, Defendant argues Plaintiff's hostile work environment claims cannot grow out of Plaintiff's allegations in her EEOC Charge related to her discrimination claims.[136]

Title VII makes it unlawful for an employer to discriminate against any individual "with respect to compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin."[137] The ADA makes it unlawful for an employer to discriminate against any individual "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[138] A complainant must file a timely charge with the EEOC prior to commencing a civil action in federal court under Title VII and the ADA.[139] In assessing whether a charge properly exhausts a particular claim, the EEOC charge is to be construed broadly.[140] However, the court will find a claim is exhausted only when it could "reasonably be expected to grow out of the charge of discrimination."[141] An employee may

---

[134] *Id.*

[135] R. Doc. 34 at p. 5.

[136] *Id.* at pp. 5-6.

[137] 42 U.S.C. § 2000e(a)(1) (2018).

[138] 42 U.S.C. § 12112(a).

[139] 42 U.S.C. § 2000e-5 (2018); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) ("[T]he ADA incorporates by reference the procedures applicable to actions under Title VII."); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 709 (E.D. La. 2013) (quoting *Williamson v. American Nat. Ins. Co.*, 695 F. Supp. 2d 431, 444 (S.D. Tex. 2010) ("The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII.").

[140] *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)).

[141] *Sanchez*, 431 F.2d at 465.

file a civil action "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[142]

The Fifth Circuit outlined the scope of the Title VII exhaustion requirement in detail in *Pacheco v. Mineta*.[143] The Fifth Circuit described:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.[144]

Nonetheless, "discrimination and harassment are 'distinct' claims."[145] "For a claim of hostile work environment to reasonably be expected to grow out of an employee's charge of discrimination, the employee must allege more than just discrete actions of discrimination."[146]

---

[142] *Fellows v. Universal Rests., Inc.,* 701 F.2d 447, 451 (5th Cir. 1983).

[143] 448 F.3d 783 (2006).

[144] *Id.* at 788-89 (internal citations omitted).

[145] *Trevino v. SAIA Motor Freight Line, LLC*, No. 20-00825, 2021 WL 1009317, at *4 (N.D. Tex. Jan. 26, 2021) (citing *Gates v. Lyondell Petrochemical Co.*, 227 Fed. App'x 409, 409 (5th Cir. 2007)).

[146] *Id.*

Broadly construing Plaintiff's EEOC Charge, the Court finds that Plaintiff failed to allege more than discrete actions of discrimination.[147] Specifically, the EEOC charge raises the following discrete actions of discrimination: (1) after attempting to return to work from medical leave in December of 2022, Bergeron approached Plaintiff to discuss disability retirement; (2) Bergeron told Plaintiff she should wear a wig because she looks like a man; (3) Plaintiff's co-worker told Plaintiff that Bergeron stated that Plaintiff took too much time off from work; (4) Plaintiff was treated differently compared to male colleagues that took medical leave and time off; and (5) Bergeron issued Plaintiff write-ups for abuse of sick leave.[148] Plaintiff's EEOC Charge lacks evidence of a "protracted history" of harassment or discrimination.[149] Plaintiff also failed to mention the terms "hostile work environment" and "harassment" in her EEOC Charge.[150] For these reasons, Plaintiff did not raise a hostile work environment claim in her EEOC Charge. An investigation concerning the existence of a hostile work environment would not reasonably be expected to grow out of Plaintiff's allegations of discrete acts of discrimination.[151] The Court will dismiss Plaintiff's hostile work environment claim without prejudice for failure to exhaust.

## VII.    Plaintiff failed to allege that she satisfied the LEDL's pre-suit notice provision for count four's LEDL hostile work environment claims based on sexual harassment and disability.

The LEDL requires that

A plaintiff who believes he or she has been discriminated against, and who

---

[147] *Blanchard v. Tulane Univ.*, 636 F. Supp. 3d 642, 653 (E.D. La. 2022).

[148] R. Doc. 29-2 at pp. 1-2.

[149] *Walton-Lentz v. Innophos, Inc.*, No. 08-601, 2011 WL 721491, at *4-5 (M.D. La. Feb. 22, 2011), *amended*, 2011 WL 1575610 (M.D. La. Apr. 25, 2011), *and aff'd and remanded*, 476 Fed. App'x 566 (5th Cir. 2012).

[150] *See Gates*, 227 Fed. App'x 409, 409 (first citing *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838-39 (8th Cir. 2002); then *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 537-38 (S.D. Tex. 1999)); *Anderson v. Sikorsky Support Servs., Inc.*, 66 F. Supp. 3d 863, 871 (S.D. Tex. 2014).

[151] *See Trevino*, 2021 WL 1009317, at *4-5.

intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.[152]

"'The filing of an EEOC charge of discrimination satisfies this notice requirement,' but only as to the discrimination alleged in the EEOC charge."[153] "To determine whether an EEOC charge provides sufficient notice under section 23:303, Louisiana courts analogize to the exhaustion of administrative remedies in federal employment-discrimination cases."[154]

Defendant argues Plaintiff did not plead facts showing that she provided Defendant with pre-suit notice for her LEDL hostile work environment claims based on sexual harassment or disability.[155] Defendant argues Plaintiff's EEOC charge did not provide pre-suit notice because Plaintiff did not allege hostile work environment claims based on sex and disability in her EEOC Charge.[156] Moreover, in her amended complaint, Plaintiff did not allege that she provided LEDL pre-suit notice.[157] In opposition, Plaintiff argues the allegations in her EEOC Charge were sufficient pre-suit notice under the LEDL of Plaintiff's hostile work environment claims based on sex and disability discrimination.[158] In reply, Defendant argues Plaintiff's EEOC Charge alleged only sex and disability discrimination claims and that Plaintiff would have needed to allege that she provided pre-suit notice for her LEDL hostile work environment claims based on sex and

---

[152] La. R.S. 23:303C.

[153] *Bowie v. Hodge*, No. 20-2441, 2021 WL 53312, at *8 (E.D. La. Jan. 6, 2021) (internal alteration omitted) (quoting *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011)).

[154] *Fontenot v. Bd. of Supervisors of La. State Univ.*, No. 22-30483, 2023 WL 4396493, at *2 (5th Cir. July 7, 2023) (citing *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999)).

[155] R. Doc. 29-1 at pp. 18-20.

[156] *Id.* at pp. 13-18.

[157] *Id.* at pp. 19-20.

[158] R. Doc. 31 at pp. 6-7.

disability discrimination through means other than Plaintiff's EEOC Charge.[159]

As explained above, Plaintiff's EEOC Charge did not properly exhaust a hostile work environment claim.[160] Because Plaintiff did not exhaust a hostile work environment claim in her EEOC Charge, Plaintiff's EEOC Charge did not provide Defendant with pre-suit notice of her LEDL hostile work environment claim. Plaintiff makes no other allegations related to pre-suit notice in her complaint.[161] Therefore, Plaintiff has not satisfied La. R.S. 23:303C.'s notice requirement for her hostile work environment claims based on sexual harassment and disability. The Court will dismiss Plaintiff's LEDL hostile work environment claim without prejudice.[162]

## VIII. The Court will not grant Plaintiff leave to file a second amended complaint.

Plaintiff asks the Court for leave to amend her complaint "should the Court determine that Plaintiff's First Supplemental and Amended Complaint does not sufficiently allege facts for any of the claims in Defendant's Motion for Partial Dismissal."[163] Federal Rule of Civil Procedure 15(a) provides leave to amend "shall be freely granted when justice so requires." A "court must have a 'substantial reason' to deny a request for leave to amend" and "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'"[164] In this case, Plaintiff already has been granted leave

---

[159] R. Doc. 34 at pp. 6-7.
[160] *See supra* at pp. 15-20.
[161] R. Doc. 22.
[162] *Dunn v. Nextel S. Corp.*, 207 F. Supp. 2d 523 (M.D. La. 2002).
[163] R. Doc. 31 at pp. 7-8.
[164] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (citing *Jacobsen v. Osborne,* 133 F.3d 315, 318 (5th Cir. 1998)).

to amend and filed an amended complaint.[165] Based on this "repeated failure to cure deficiencies by amendments previously allowed,"[166] the Court finds further amendment is not warranted.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion to dismiss is **GRANTED.** The Court dismisses with prejudice (1) Plaintiff's claims for punitive damages under all counts; (2) Plaintiff's claim for compensatory damages in count four under the ADA; (3) Plaintiff's claim in count two under the RA; (4) Plaintiff's retaliatory demotion claim in count four under La. R.S. 23:967; and (5) Plaintiff's LEDL retaliation claims based on sex-discrimination and disability-discrimination in count four.

**IT IS FURTHER ORDERED** that the Court dismisses without prejudice Plaintiff's hostile work environment claims in count four under Title VII, the ADA, and the LEDL.[167]

**New Orleans, Louisiana, this 19th day of February, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[165] R. Doc. 21; R. Doc. 22.
[166] *Herrmann Holdings Ltd.*, 302 F.3d at 566.
[167] Following the issuance of this order and reasons, Plaintiff's remaining claims include: (1) for count one, Plaintiff maintains a Title VII sex discrimination claim; (2) for count two, Plaintiff maintains an ADA disability discrimination claim; (3) for count three, Plaintiff maintains an LEDL disability discrimination claim; and (4) for count four, Plaintiff maintains retaliatory discharge and wrongful termination claims under Title VII and the LEDL.