## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JENNIFER PAYNE,**                                    CIVIL ACTION
      **Plaintiff**

**VERSUS**                                             NO.  24-1857

**HAMMOND CITY,**                                      SECTION: "E" (3)
      **Defendant**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant City of Hammond ("Defendant").[1] Plaintiff Jennifer Payne ("Plaintiff") filed an opposition[2] and Defendant filed a reply.[3] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Based on the Defendant's summary judgment motion and the Plaintiff's opposition, as well as the Joint Pretrial Order,[4] it is clear the parties agree on these basic facts. Plaintiff was hired by the Hammond Police Department on July 3, 2000 as a Communications Officer.[5] She was reclassified as a Police Officer on November 20, 2002 and was promoted to Sergeant in 2017, and probationary Lieutenant on February 18, 2022.[6]

Plaintiff received a cervical injection on September 1, 2022[7] and she was placed on sick leave.[8] From September 5-10, 2022, Plaintiff was on a cruise to Mexico.[9] On

---

[1] R. Doc. 66.
[2] R. Doc. 68.
[3] R. Doc. 70.
[4] R. Doc. 81.
[5] *Id.* at ¶ 10.
[6] *Id.* at ¶ ¶ 15, 16, 17.
[7] *Id.* at ¶ 22; Plaintiff's summary of material facts states this occurred on September 2, 2022. R. Doc. 81 at p. 2.
[8] R. Doc. 81, uncontested material facts, at ¶ 24.
[9] *Id.* at ¶ 37.

September 19, 2022, Plaintiff underwent a second cervical injection procedure.[10] On December 27, 2022, Payne underwent spinal fusion surgery performed by Dr. Eric Oberlander.[11]

On May 3, 2023, Plaintiff initiated an EEOC Complaint alleging discrimination on the basis of her disability and gender.[12] On May 9, 2023, the City was notified of this charge.[13] On May 25, 2023, Plaintiff was demoted two ranks from probationary lieutenant patrol officer for two years, ostensibly for a sick leave violation.[14] Plaintiff was terminated on December 18, 2023,[15] but continued to receive paid sick leave and benefits through December 31, 2023.[16]

Plaintiff makes several claims against Defendant.[17] In count one, Plaintiff brings a sex discrimination claim under Title VII of the Civil Rights Act ("Title VII").[18] In count two, Plaintiff brings a disability discrimination claim under Title I of the Americans with Disabilities Act ("ADA").[19] In count three, Plaintiff brings a disability discrimination claim under the Louisiana Employment Discrimination Law ("LEDL").[20] In count four, Plaintiff brings retaliatory demotion under Title VII and retaliatory discharge and wrongful termination claims under Title VII and the LEDL.[21] Defendants seek summary judgment

---

[10] *Id.* at p. 7.
[11] *Id.* at p. 3; ¶ 1. The parties later state at ¶ 57 that this surgery occurred on December 28, 2022.
[12] *Id.* at ¶ 80; Plaintiff's summary of material facts states this occurred on May 2, 2023. R. Doc. 81 at p. 2.
[13] R. Doc. 81, uncontested material fats, at ¶ 88.
[14] *Id.* at ¶ 91.
[15] *Id.* at ¶ 123.
[16] *Id.* at p. 13.
[17] The Court granted Defendant's partial Motion to Dismiss some of Plaintiff's claims, dismissing (1) Plaintiff's claims for punitive damages under all counts; (2) Plaintiff's claim for compensatory damages under the ADA; (3) Plaintiff's claim under the Rehabilitation Act; (4) Plaintiff's state law retaliatory demotion claim; and (5) Plaintiff's LEDL retaliation claims based on sex-discrimination and disability-discrimination. The Court also dismissed Plaintiff's hostile work environment claims under Title VII, the ADA, and the LEDL. R. Doc. 36 at p. 23.
[18] R. Doc. 22 at ¶ 29.
[19] *Id.* at ¶ 38.
[20] *Id.* at ¶¶ 42-43.
[21] *Id.* at p. 11.

on all claims federal and state.[22]

In response to these claims, Defendant argues that Plaintiff failed to comply with HPD's policies regarding returning to work after sick leave and, as a result, the Defendant could not assign her to light duty.[23] Defendant further argues that it applies a gender-neutral sick leave policy that did not confine Plaintiff to her home, but rather only required her to notify HPD when leaving her home.[24] Furthermore, Defendant states that any adverse employment actions taken against the Plaintiff were not instances of sex discrimination nor were they taken in retaliation for her EEOC charge. Rather, Defendant claims to have demoted her due to her violation of HPD's sick leave policy, and to have dismissed her because of her inability to carry out essential job functions due to her medical condition.[25]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] "An issue is material if its resolution could affect the outcome of the action."[27] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] All reasonable inferences are drawn in favor of the nonmoving party.[29] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving

---

[22] R. Doc. 66. at p. 1.
[23] R. Doc. 66-1 at p. 32.
[24] *Id.* at 5.
[25] R. Doc. 66-2 at p. 22-23.
[26] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[27] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

party, thus entitling the moving party to judgment as a matter of law.[30]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[31] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[32]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[33] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[34] When, however, the

---

[30] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[31] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[32] *Celotex*, 477 U.S. at 322-24.

[33] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[34] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[35] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[36] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[37] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[38]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[39]

---

[35] *Celotex*, 477 U.S. at 332-33.
[36] *Id.*
[37] *Id.* at 332-33 & n.3.
[38] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[39] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

## LAW AND ANALYSIS

I.     **Count I: Defendant is entitled to summary judgment on Plaintiff's Title VII sex discrimination claim.**

   A.     **Factual Background**

Plaintiff alleges Defendant discriminated against her based-on her sex, in violation of Title VII. Plaintiff claims this discrimination materialized in three forms: Defendant's refusal to assign her to light duty but allowing male officers to work light duty, Defendant's holding her to different sick leave policy requirements than other male officers, and Defendant's disciplining her for sick leave violations while not disciplining male officers who violated sick leave.[40]

First, Plaintiff claims Defendant discriminated against her based on her sex by denying her request for light duty on September 2, 2022[41] while assigning other male officers to light duty around the same time.[42] Second, Plaintiff claims Defendant discriminated against her based on her sex by forcing her to adhere to HPD General Order No. 140's sick leave requirements while she was on extended sick leave in 2023, while not requiring this of male officers.[43] Finally, Plaintiff states Defendant disciplined her with demotion for her September 2022 sick leave violation while not punishing male officers for the same sick leave policy violations.

The following facts are undisputed. On April 29, 2022, Plaintiff submitted a vacation request to take a cruise on September 5-10, 2022. Plaintiff was unable to work on September 2, 2022 due to receiving an epidural steroid injection; her absence was designated as sick leave.[44] Payne submitted an attending physician report dated

---

[40] R. Doc. 68-1 at ¶ 239; R. Doc. 68 at pp. 1, 13.
[41] R. Doc. 68-3, Exh. 2.
[42] R. Doc. 68 at p. 1.
[43] R. Doc. 66-9 at Exh. 69, Payne at 238:18-14, 271:22-277:7; R. Doc. 66-10 at Exh. 72, Nos. 16-17.
[44] R. Docs. 66-1 at ¶ ¶ 12, 14 (citing R. Doc. 66-4 at Exh. 5 at 10:22-11;17, 12:8-19); 68-1 at ¶ ¶ 12, 14.

September 1, which approved her for limited duty on September 3-10 with physical restrictions.[45] As this was Payne's 32nd instance of sick leave and her 7th non-consecutive sick leave period, she was required to see the city doctor before returning to work.[46] Captain Wayne Scivicque, one of Plaintiff's supervisors during the relevant period of this case, advised Plaintiff on September 2, 2022 that she was required to see the city doctor before she could return to work.[47] HPD General Order states: "Sick leave shall begin upon notification...and continue until the employee returns to work."[48] Plaintiff did not see the city doctor prior to September 5, 2022.[49] Plaintiff took a cruise on September 5-10, 2022.[50] Police Chief Edwin Bergeron did not authorize Payne to take a personal cruise while on sick leave status.[51] After this trip, Lieutenant David Mauro conducted an Internal Affairs investigation into whether Plaintiff's cruise violated sick leave policy; the investigation found Plaintiff did violate the policy.[52] Plaintiff was demoted two ranks on May 25, 2023 for this violation.[53]

Plaintiff did not see the city doctor until October 5, 2022, when the city doctor determined Plaintiff could not return to work pending MRI results.[54] On December 27, 2022 Defendant underwent a lumbar fusion surgery.[55] From September 21, 2022 to June 28, 2023, multiple physicians examined Plaintiff and subsequently submitted a series of Attending Physician Reports ("APR") stating that Plaintiff could not return to work until

---

[45] R. Doc. 66-1 at ¶ 17; R. Doc. 68-1 at ¶ 17.
[46] R. Docs. 66-1 at ¶ 24 (citing R. Doc. 66-4 at Exh. 7 at ¶¶25-28); 68-1 at ¶ 24.
[47] R. Doc. 66-1 at ¶ 26; R. Doc 68-1 at ¶ 26.
[48] R. Docs. 66-1 at ¶ 36 (citing R. Doc. 66-4 at Exh. 10); 68-1 at ¶ 36.
[49] R. Docs. 66-1 at ¶ 30 (citing R. Doc. 66-4 at Exh 11 at COH_JP-000707-000708); 68-1 at ¶ 70.
[50] R. Docs. 66-1 at ¶ 37 (citing R. Doc. 66-4 at Exh. 8, Exh. 11 at COH_JP-00708; R. Doc. 66-9 at Exh. 69, Payne at 68:23-69:2); 68-1 at ¶ 37.
[51] R. Doc. 81, uncontested material fats, at ¶ 37.
[52] R. Docs. 66-1 at ¶¶ 53, 54, 59 (citing 66-4 Exh. 13, Exh. 14A at COH_JP-000279; R. Doc 66 at 66-9 at Exh. 69, Mauro at 7:4-16); 68-1 at ¶ ¶ 53, 54, 59.
[53] R. Doc. 81, uncontested material fats, at ¶ 91.
[54] R. Docs. 66-1 at ¶ 70 (citing R. Doc. 66-4 at Exh 11 at COH_JP-000707-000708); 68-1 at ¶ 70.
[55] R. Doc. 81, uncontested material facts, at ¶ 1.

further notice.[56]

On July 31, 2023, an attending physician report authored by Daniel Long P.A. authorized Plaintiff to return to work on limited duty.[57] HPD General Order No. 140 further states: "Upon release from physician to return to duty from extended sick leave a Fit for Duty [test] will be required 'prior' to one's return to work and will be directed to a facility by the City at the City's expense."[58] Although fit for duty testing was scheduled for Plaintiff on August 24, 2023, this appointment was later cancelled due to a lack of medical clearance from Plaintiff's personal physician;[59] Plaintiff never completed fit for duty testing.[60]

Plaintiff claims Defendant discriminated against her by denying her September 2, 2022 light duty request while assigning male officers Ryan Ray, Patrick Tomberlin, and Terry Sanchez to light duty work.[61] She offers an affidavit from Ryan Ray, in which he states that he worked light duty around the time Plaintiff requested such an assignment.[62]

It is undisputed that Section B of HPD General Order No. 140 states that employees shall not leave their residence except for stated reasons, including when the employee receives written approval to leave her home after notifying Human Resources, the Chief, or his designee.[63] Plaintiff claims Defendant required her to abide by this policy while she was on extended sick leave from September 2, 2022 until her termination on December 18, 2023, while allowing HPD officers Tom Mushinksy, Vince Jones, and David Mauro to

---

[56] R. Docs. 66-1 at ¶ ¶ 69-80 (citing R. Doc. 66-5 at Exhs. 20, 23A, 23B, 24 (at COH_JP-001742-43), 23C, 25-30); 68-1 at ¶ ¶ 69-80.

[57] R. Docs. 66-1 at ¶ 142 (citing R. Doc. 66-7 at Exh. 51); 68-1 at ¶ 142.

[58] R. Docs. 66-1 a ¶ 145 (citing R. Doc. 66-4 at Exh. 10); 68-1 at ¶ 145.

[59] R. Doc. 81, uncontested material facts, at ¶ 106.

[60] R. Docs. 66-1 at ¶ 160 (citing R. Doc. 66-7 at Exh. 57B, at p. 1); 68-1 at ¶ 160.

[61] R. Doc. 68-1 at p. 13; 66-9 at Exh. 69, Payne at 227:22-228:10; 236:16-238:17.

[62] R. Doc. 68-10, Exh. 8.

[63] R. Doc. 81 at ¶ 39.

leave their homes without approval while on sick leave.[64] She also points to Tom Mushinsky and Vince Jones as male officers who violated sick leave policy but received no discipline.[65]

### B.    Legal Analysis

Under Title VII, it is unlawful to discriminate against an employee on the basis of sex.[66] "In a disparate treatment case, an employee must establish that her employer had a discriminatory intent or motive for taking a job-related action."[67] A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination under Title VII.[68] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[69] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[70] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *McDonnell Douglas* burden-shifting analysis.[71] Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[72] If successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decision.[73] Finally, the plaintiff must then show the defendant's proffered reason is pretextual or unworthy of belief.[74]

---

[64] R. Doc. 66-9 at Exh. 69, Payne at 238:18-14, 271:22-277:7; R. Doc. 66-10 at Exh. 72, Nos. 16-17.
[65] R. Doc. 66-10, at Exh. 72, at Interrog. Nos. 16-17.
[66] 42 U.S.C. 2000e-2(a).
[67] *Saketoo v. Administrators of Tulane Educational Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Ricci v. Destefano*, 557 U.S. 557, 577 (2009)).
[68] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[69] *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (1993).
[70] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[71] *Smith v. Touro Infirmary*, 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[72] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (applying *McDonnell Douglas* test).
[73] *Id.*
[74] *Id.*

To determine whether to apply the *McDonnell Douglas* analysis, the Court first looks to whether the plaintiff has offered direct evidence of intentional discrimination. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face."[75]  In this case, Plaintiff has not produced any evidence that, on its face, shows Defendant acted in a discriminatory way. In the absence of direct evidence showing Defendant's alleged discriminatory motive, Plaintiff relies on circumstantial evidence, and therefore the *McDonnell Douglas* framework applies.[76]

To make a prima facie case of sex discrimination under Title VII, Plaintiff must show she (1) is in a protected class; (2) qualified for her job; (3) suffered an adverse employment act; and (4) was treated less favorably than similarly situated employees outside the protected class.[77] Defendant bases its Motion for Summary Judgment regarding Plaintiff's sex discrimination claims on the argument that Plaintiff has not made a prima facie case on prong (4), that Plaintiff was treated less favorably than similarly situated male employees.[78]

As a result, the question of whether Plaintiff has made a prima facie case of sex discrimination hinges on the fourth prong, whether Defendant treated her less favorably than similarly situated male employees. Courts in this circuit require employees to have suffered adverse employment actions under "nearly identical circumstances" for them to be considered similarly situated.[79] However, courts should not interpret "nearly identical" to mean "identical."[80] "The employment actions being compared will be deemed to have

---

[75] *Portis v. First Nat'l Bank of New Albany, Miss.,* 34 F.3d 325, 329 (5th Cir. 1994).
[76] *See Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015).
[77] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).
[78] *See* R. Doc. 66-2 at pp. 14-20.
[79] *Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009).
[80] *Id.*

10

been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[81] The plaintiff's conduct that led to the adverse employment action must also be "nearly identical" to that of the similarly situated employee who did not suffer an adverse employment action.[82] Furthermore, the difference in conduct between the employees cannot account for their difference in treatment.[83]

Even if a plaintiff alleges a comparator employee is similarly situated to the plaintiff, at the summary judgment stage the plaintiff must offer evidence to demonstrate their circumstances are "nearly identical" to make a prima facie case of sex discrimination. For example, in *Saketoo v. Administrators of Tulane Educational Fund*, an associate medical professor sued the administrators of her university employer, alleging they discriminated against her based-on gender.[84] In support, she claimed she was denied work opportunities that were offered to male professors. However, the district court granted summary judgment in favor of the administrators.[85] On appeal, the Fifth Circuit upheld the district court's judgment, reasoning that, although the professor claimed her male colleagues received favorable treatment, she did not state sufficient facts to show how she and these male employees were similarly situated.[86] In fact, in *Saketoo*, the plaintiff ignored key differences between her situation and those she claimed were her comparators, such as their different job titles and responsibilities.[87]

---

[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] 31 F.4th 990, 996 (5th Cir. 2022).
[85] *Id.*
[86] *Id.* at 998-999.
[87] *Id.*

### 1.    Light Duty Request

Plaintiff has failed to demonstrate a prima facie case of sex discrimination as she has not put forth any evidence showing Defendant treated similarly situated male employees more favorably than it treated her with respect to assignment to light duty.[88] Plaintiff claims Defendant discriminated against her based on her sex by denying her light duty work in September of 2022 while assigning similarly situated male officers to light duty around that time.[89]

Even when making a prima facie case of sex discrimination, a plaintiff must supply evidence that male comparators were similarly situated to her.[90] Plaintiff argues HPD offered light duty work to male officers Ryan Ray, Patrick Tomberlin, and Terry Sanchez, but refused that work to her.[91] She offers an affidavit from Ryan Ray, in which he states that Defendant assigned him to light duty work around the time Plaintiff requested such an assignment.[92]

Plaintiff's problem is that she was never eligible to return to work, even on light duty.[93] The fact that other employees were granted light duty alone does not demonstrate that Defendant treated similarly situated male colleagues more favorably than Plaintiff. Plaintiff presents no facts showing Defendant assigned the male comparator officers light duty despite their being ineligible to work while denying light duty to Plaintiff. She presents no evidence demonstrating that the male comparator officers and she had comparable job titles, responsibilities, or most importantly, conduct histories.[94]

---

[88] R. Doc. 66-2 at p. 9.
[89] R. Doc. 68- at p. 8.
[90] *See Saketoo,* 31 F.4th at 998-999.
[91] R. Doc. 68-1 at p. 58; 66-9 at Exh. 69, Payne at 227:22-228:10; 236:16-238:17.
[92] R. Doc. 68-10.
[93] R. Doc. 70 at pp. 2-3.
[94] *See Lee,* 574 F.3d at 260; *Saketoo v. Administrators of Tulane Educational Fund,* 31 F.4th 990, 998-99 (5th Cir. 2022).

Plaintiff has not shown that these male employees failed to comply with HPD policy, in a manner similar to how she failed to comply. While it remains unclear whether or not HPD assigned officers to light duty at this time,[95] it is undisputed that on September 2, 2022, Plaintiff could not return to work under any circumstances until she visited a city doctor, which she did not do.[96] When she did see the city doctor on October 5, 2022, the city doctor refused to clear her for duty, and subsequent doctors' reports similarly declined to allow Plaintiff to return to work under any circumtsnaces.[97] Furthermore, Plaintiff never completed fit for duty testing following her extended sick leave, as required by HPD policy.[98]

Plaintiff has not ruled out that the difference in Plaintiff's and her male colleagues' conduct accounts for their difference in treatment.[99] Accordingly, Defendant has not demonstrated that she was treated less favorably than similarly situated males. As a result, she has not made a prima facie case of sex discrimination based on the Defendant's failure to assign her to light duty.

Even if Plaintiff had made a prima facie case, her claim would fail because she did not rebut Defendant's non-discriminatory reasons for denying her light duty. After an employee makes a prima facie case under the *McDonnell Douglas* framework, the burden shifts to the defendant to demonstrate it had non-retaliatory reasons for demoting the

---

[95] Contradicting evidence exists as to whether HPD assigned officers to light duty. While Plaintiff alleges certain male officers worked light duty (R. Doc. 68-10), Defendant claims light duty was not available to officers after the State Examiner's Office advised HPD that light duty is not recognized under civil service law. Defendant does not provide a date for the policy's discontinuance. R. Doc. 70 at p. 4. However, such a discussion of light duty availability is immaterial because Plaintiff never satisfied HPD requirements to return to work in any capacity.

[96] R. Doc. 66-4 at Exh. 8, Exh. 11 at COH_JP-00708; R. Doc. 66-9 at Exh. 69, Payne at 68:23-69:2.

[97] R. Docs. 66-1 at ¶ 30 (citing R. Doc. 66-4 at Exh 11 at COH_JP-000707-000708); R. Docs. 66-1 at ¶ ¶ 69-80 (citing R. Doc. 66-5 at Exhs. 20, 23A, 23B, 24 (at COH_JP-001742-43), 23C, 25-30); 68-1 at ¶ ¶ 69-80.

[98] R. Doc. 66-7 at Exh. 57B at p. 1.

[99] *Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009).

plaintiff.[100] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[101] The defendant must rebut a prima facie case with evidence of a legitimate, nondiscriminatory reason for its employment decision.[102]

In this case, Defendant proffers evidence demonstrating non-discriminatory reasons for denying Plaintiff light duty. Defendant cites to HPD General Order No. 140, which states: "on fifth (5+) absence personnel will be required to report to the city physician and provide required documentation."[103] As Plaintiff's September 2, 2022 absence was her 32nd instance of sick leave and 7th non-consecutive sick leave period, she was required to see the city physician before returning to work.[104] In other words, Defendant's sick leave policy prohibited it from granting Plaintiff light-duty status or returning her to work in any capacity, as she had not seen the city doctor prior to her request. Defendant has set forth non-discriminatory reasons for denying Plaintiff light-duty work. "The employee must [now] present evidence that the articulated reason is pretextual."[105]

"In response to a motion for summary judgment, an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason...is pretextual."[106] "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[107]

Plaintiff points to the affidavit from Ryan Ray, in which he states only that he worked light duty around the time Plaintiff requested it, to demonstrate that Defendant's

---

[100] *Id.* at 259.
[101] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[102] *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 904 (5th Cir. 2012).
[103] R. Docs. 66-1 at ¶ 25 (citing R. Doc. 66-4 at Exh. 10 at § F(3)); 68-1 at ¶ 25.
[104] R. Docs. 66-1 at ¶ 24 (citing R. Doc. 66-4 at Exh. 7 at ¶¶25-28).
[105] *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016).
[106] *Id.* at 480.
[107] *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001))).

non-discriminatory explanation amounts to pretext.[108] However, the Ray affidavit does not change the fact that Plaintiff was not eligible to return to work in any capacity until a city doctor cleared her to return to work. Plaintiff offers no evidence showing Officer Ray was similarly situated to her, i.e., that he was on his 32nd instance of sick leave and seventh non-consecutive sick leave period. Nor does she provide evidence showing Ray was required to but failed to see a city doctor and nevertheless was assigned to light duty work. Furthermore, Plaintiff offers no HPD sick leave policy that contradicts HPD General Order No. 140 requiring her to see a city doctor before returning to work, nor does she offer evidence showing HPD inconsistently enforces this requirement. There is no genuine dispute of material fact as to whether Defendant's proffered explanation is worthy of credence. Even viewing the evidence in a light most favorable to the Plaintiff, no documents or testimony show Defendant's stated reasons for denying Plaintiff light duty are pretextual. As a result, even if Plaintiff had made a prima facie case of discrimination, her claim would still fail.

## 2.    Disparate Sick Leave Policy Requirements

Plaintiff has failed to demonstrate a prima facie case of sex discrimination as she has not put forth any evidence showing Defendant treated similarly situated male employees more favorably than her with respect to sick leave treatment. Plaintiff claims Defendant discriminated against her based on her sex by requiring her to seek authorization from human resources or her superiors before leaving her home while on sick leave, while allowing male officers on sick leave to leave their homes as they pleased.[109] Plaintiff claims HPD General Order No. 140, which requires employees on sick

---

[108] R. Doc. 68-10, Exh. 8.
[109] R. Doc. 66-9 at Exh. 69, Payne at 238:18-14, 271:22-277:7; R. Doc. 66-10 at Exh. 72, Nos. 16-17.

leave to receive authorization before leaving their residences, resulted in her being "confined in her home" while on extended sick leave from September 2, 2022 to her termination on December 18, 2023.[110] In addition, Plaintiff claims HPD officers Tom Mushinksy, Vince Jones, and David Mauro were allowed to leave their homes as they pleased while on sick leave.[111]

Plaintiff does not provide adequate evidence demonstrating similarly situated male officers received more favorable sick leave treatment. While Plaintiff does not need to offer identical male comparators with the exact same employment profiles as her, she must demonstrate that Defendant treated "nearly identical" male employees better than her.[112] However, Plaintiff does not show these male employees received favorable treatment, or even if they did, that they received it under nearly identical scenarios. She admits she does not know the specifics of the male comparators' situations, such as why they were out on sick leave or whether HPD formally authorized them to leave their homes.[113] She even acknowledges she did not know for a fact that Jones lacked authorization to leave his home.[114]

Furthermore, Plaintiff does not offer any facts showing these male comparators had similar job titles, supervisors, or conduct histories.[115] For comparator employees to be similarly situated, their conduct must have been "nearly identical."[116] Plaintiff has failed to allege sufficient facts to demonstrate she and her male comparators had similar sick leave situations or that Defendant allowed these male officers to violate sick leave policy

---

[110] R. Doc. 68-1 at ¶ 99.
[111] R. Doc. 66-9 at Exh. 69, Payne at 238:18-14, 271:22-277:7; R. Doc. 66-10 at Exh. 72, Nos. 16-17.. Doc. 66-10 at Exh. 72, at Interrog. No. 16.
[112] *Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009).
[113] R. Doc. 66-9 at Exh. 69, Payne at 239:11-240:5; 240:6-14; 272:18-274:20; 276:14-277:7.
[114] *Id.*
[115] R. Doc. 66-2 at p. 16.
[116] *See Lee,* 574 F.3d at 260.

while requiring her to adhere to it. As a result, Plaintiff has failed to make a prima facie case of sex discrimination based on Defendant requiring her to abide by HPD sick leave policy.

Again, even assuming Plaintiff made a prima facie case of discrimination based on Defendant denying Plaintiff the ability to leave her home without authorization, Plaintiff's claim would still fail. If Plaintiff had made a prima facie case of sex discrimination, the burden would shift to Defendant to offer non-discriminatory reasons for its actions. Defendant denies it discriminated against Plaintiff based on her sex and identifies a non-discriminatory reason for requiring Plaintiff to seek authorization before leaving her home—HPD General Order No. 140.[117]

Accordingly, the burden returns to Plaintiff to demonstrate Defendant's stated reasons for its employment action amount to pretext.[118] Plaintiff fails to put forth any evidence showing that Defendant's explanation amounts to pretext. Although she points to other male officers who she alleges received favorable sick leave treatment, she offers no evidence to support this; "[u]nsubstantiated assertions are not competent summary judgment evidence."[119] There is no genuine dispute of material fact as to whether Defendant's proffered explanation is worthy of credence. Even viewing the evidence in a light most favorable to the Plaintiff, no documents or testimony show Defendant's stated reasons for holding Plaintiff to HPD sick leave requirements are pretextual.  As a result, Plaintiff's claims for sex discrimination under Title VII fail, and Defendant is entitled to judgment as a matter of law on the claims.

---

[117] R. Doc. 66-2 at p. 16.
[118] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).
[119] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

### 3.    Disparate Disciplinary Action

Plaintiff has failed to demonstrate a prima facie case of sex discrimination as she has not put forth any evidence showing Defendant treated similarly situated male employees more favorably than it treated her with respect to disparate punishment for sick leave violations. Plaintiff claims that male officers Tom Mushinsky and Vince Jones violated sick leave policy but received no discipline, while she was demoted two-ranks on May 25, 2023 for her violation of sick leave policy.[120] Plaintiff claims Mushinsky and Jones were allowed to leave their homes as they pleased while on sick leave;[121] she stated in her deposition that Mushinsky informed her that Captain Scivicque told him he "couldn't [be] expect[ed] to stay at home like [Plaintiff] had to."[122] She also stated that Captain Scivicque told Vince Jones and her husband, Thad Gautier, that Jones did not need to seek authorization to go to Florida while on sick leave; Gautier relayed this statement to Plaintiff.[123]

A Plaintiff's deposition testimony can serve as competent summary judgment evidence so long as its proponent can show that the statement can be presented in an admissible form at trial.[124] The Plaintiff is unable to do this because Mushinsky and Gautier's statements constitute inadmissible hearsay, as they are out of court statements offered for the truth of the matter asserted,[125] that Mushinsky and Jones were allowed to

---

[120] R. Doc. 81, uncontested material facts, at ¶ 91.

[121] R. Doc. 66-9 at Exh. 69, Payne at 238:18-14, 271:22-277:7; R. Doc. 66-10 at Exh. 72, Nos. 16-17.. Doc. 66-10 at Exh. 72, at Interrog. No. 16.

[122] R. Doc. 66-9, Exh. 69, at 239:12-20.

[123] *Id.* at 273:6-274:10.

[124] *See Sharper v. Right Away Maintenance Company*, No.22-560-SDJ, 2024 WL 2064061, at *4 (M.D. La. May 8, 2024) (citing *Miller v. Michaels Stores, Inc.,* 98 F.4th 211, 218 (5th Cir. 2024)).

[125] Fed. R. Evid. 801(c)(1)-(2). Hearsay exception Fed. R. Evid. 801(d)(2)(D) allows testimony that would otherwise be inadmissible hearsay if the party making the statement was the party's agent or employee and the statement offered concerned a matter within the scope of that employer/employee relationship. In a case concerning an employment action, the Fifth Circuit stated this exception only applies when the party making the statement is involved in the decision-making process affecting the employment action in question. *Lay v. Singing River Health System,* 694 Fed.Appx. 248, 257 (5th Cir. 2017). In the present case,

18

leave their homes without authorization while on sick leave. These statements do not fall under any hearsay exception and, as a result, this Court cannot consider them in ruling on this motion.

Plaintiff has provided no other evidence showing that Mushinsky or Jones violated sick leave policy. In fact, Plaintiff admits she does not know whether Jones had actually been approved to leave his home.[126] As Plaintiff has failed to offer any evidence creating a genuine issue of material fact as to whether any male officers were treated more favorably than she was, let alone similarly situated male officers, she has failed to make a prima facie case of sex discrimination based on disparate sick leave disciplinary actions. Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

Assuming Plaintiff had made a prima facie case of sex discrimination based on disparate disciplinary action, her claim would still fail. Defendant denies that it failed to discipline male officers who violated sick leave and offers a non-discriminatory reason for disciplining Plaintiff, pointing to the fact that Plaintiff not only violated sick leave policy by leaving her house without authorization, but left the entire country.[127]

As Defendant has articulated a non-discriminatory reason for disciplining Plaintiff, the burden returns to Plaintiff to demonstrate that Defendant's stated reason amounts to pretext. However, Plaintiff does not achieve this. She does not offer any evidence showing that Defendant did not discipline male officers for violating sick leave but demoted her. As stated above, she even acknowledges she did not know whether Jones was authorized to leave his house on sick leave[128] and offers no competent summary

---

neither Mushinsky, Jones, nor Gauttier were involved in sick leave disciplinary decisions. Accordingly, these statements about what Scivicque told them were not made within the scope of their employment and 801(d)(2)(D) does not apply.

[126] R. Doc. 66-9, Exh. 69 at 272:18-274:20.
[127] R. Doc. 66-1 at ¶ 40.
[128] R. Doc. 66-9, Exh. 69 at 272:18-274:20.

judgment evidence showing Mushinsky violated sick leave policy. Furthermore, she presents no facts demonstrating that she did not violate HPD policy by going on a cruise while on sick leave. There is no genuine dispute of material fact as to whether Defendant's proffered explanation is worthy of credence. Even viewing the evidence in a light most favorable to the Plaintiff, no documents or testimony show Defendant's stated reasons for disciplining Plaintiff, but not other male officers, are pretextual.  As a result, even if Plaintiff had made a prima facie case of sex discrimination, her claim would still fail.

## II.     Counts Two and Three: Defendant is entitled to summary judgment on Plaintiff's ADA and LEDL claims.

### A.     Factual Background

Plaintiff claims Defendant violated the ADA and LEDL by failing to accommodate her disability by: (1) failing to allow her a reasonable time to recover from her December 27, 2022 spinal surgery before terminating her on December 18, 2023;[129] (2) not assigning her to light duty between September 2, 2022 and December 18, 2023;[130] (3) refusing to lift restrictions set forth in HPD's sick leave policy while Plaintiff was on extended sick leave from September 2, 2022 to her termination;[131] (4) refusing to reassign her to a different position in the communications department where she could more easily perform the essential functions of her job; and (5) not engaging in a good faith interactive process with Plaintiff by failing to offer her a reasonable accommodation and not following up with her personal physician after he submitted a job analysis report on September 25, 2023.[132]

---

[129] R. Doc. 68-7, Exh. 7.
[130] R. Doc. 68-10, Exh. 8.
[131] R. Docs. 68-7, Exh. 7; 68-6, Exh. 6.
[132] R. Docs 68-6 Exh. 6; 68-13, pp. 53-54.

The following facts are undisputed. From September 21, 2022 to June 28, 2023, multiple physicians examined Plaintiff and subsequently submitted a series of Attending Physician Reports ("APR") stating that Plaintiff could not return to work until further notice.[133] On July 31, 2023, an attending physician report authored by Daniel Long P.A. authorized Plaintiff to return to work on limited duty.[134] HPD General Order No. 140 states: "Upon release from physician to return to duty from extended sick leave a Fit for Duty will be required 'prior' to one's return to work and will be directed to a facility by the City at the City's expense."[135] Although fit for duty testing was scheduled for Plaintiff, this appointment was later cancelled due to a lack of medical clearance from Plaintiff's personal physician.[136] In a letter dated Aug. 30, 2023, Diana McMahon of HPD human resources requested Dr. Eric Oberlander, Plaintiff's personal physician, to assist in determining whether Plaintiff could safely perform essential functions of her job with or without a reasonable accommodation.[137] Dr. Oberlander completed a job analysis report dated Sept. 25, 2023, in which he stated Plaintiff would likely have permanent restrictions due to her lumbar surgeries, that she should not lift more than 35-40 pounds, that she should experience minimal bending and twisting, walk minimally, and stand for no more than 2 hours at a time without a break.[138] In response to a question asking if Plaintiff's condition precluded her from safely performing any of the essential functions of her job, and if so, for how long, Dr. Oberlander responded "yes, likely permanent."[139] A job analysis report performed by city doctor Michael Christner, dated November 2, 2023, agreed with

---

[133] R. Docs. 66-1 at ¶ ¶ 69-80 (citing R. Doc. 66-5 at Exhs. 20, 23A, 23B, 24 (at COH_JP-001742-43), 23C, 25-30); 68-1 at ¶ ¶ 69-80.
[134] R. Docs. 66-1 at ¶ 142 (citing R. Doc. 66-7 at Exh. 51); 68-1 at ¶ 142.
[135] R. Docs. 66-1 a ¶ 145 (citing R. Doc. 66-4 at Exh. 10); 68-1 at ¶ 145.
[136] R. Docs. 66-1 at ¶ 160 (citing R. Doc. 66-7 at Exh. 57B, at p. 1); 68-1 at ¶ 160.
[137] R. Docs. 66-1 at ¶ 165 (citing R. Doc. 66-7 at Exh. 58 at p.1); 68-1 at ¶ 165.
[138] R. Docs. 66-1 at ¶ 167 (citing R. Doc. 66-7 at Exh. 60); 68-1 at ¶ 167.
[139] R. Docs. 66-1 at ¶ 172 (citing R. Doc. 66-7 at Exh. 60); 68-1 at ¶ 172.

Dr. Oberlander's evaluation.[140] On November 20, a hearing was held regarding Plaintiff's disability and extended sick leave.[141] On November 27, Plaintiff submitted a written request to the city, requesting the ability to leave her home without city approval.[142] The city responded that Plaintiff was allowed to leave her house with proper notification per city policy.[143]

Plaintiff cites an affidavit from her personal physician, Dr. Eric Oberlander, dated September 25, 2023, stating that "[i]n my medical opinion, following appropriate recovery from surgery, Jennifer Payne could have recovered and performed the essential duties and responsibilities of a police officer."[144] Furthermore, Plaintiff claims Defendant improperly refused to lift HPD General Order No. 140's notification requirement and to allow her to leave her home without authorization.[145] She supplies doctors' notes addressed to Defendant and alleges that these letters state that lifting such restrictions would aid in her recovery.[146] She further supplies doctor's notes stating that by preventing her from leaving her "place of confinement," Plaintiff's recovery may have been prolonged.[147]

Defendant states that according to HPD's description of the duties of a police officer, Plaintiff's job requires her to carry between 10 and 150 pounds 6-33% of the day, walk 34-66% of the day, and stand 67% of the day.[148] It also claims that as a police officer, Plaintiff's duties included conducting traffic stops, securing crime scenes, engaging and subduing perpetrators, utilizing a firearm, accessing structures, and assisting

---

[140] R. Docs. 66-1 at ¶ 180 (citing R. Doc. 66-7 at Exh. 63 at COH_JP-000285); 68-1 at ¶ 180.
[141] R. Doc 81, undisputed facts, at ¶ 119.
[142] *Id.* at¶ 121.
[143] *Id.* at ¶ 122.
[144] R. Doc. 68-1 at ¶ 172 (citing R. Doc. 68-7).
[145] R. Doc. 68 at pp. 9-10.
[146] *Id.*
[147] R. Docs. 68-7, Exh. 7; 68-6, Exh. 6.
[148] R. Doc. 66-5 at Exh. 18B at COH_JP-000654.

officers/civilians to safety.[149] Furthermore, Defendant states that multiple doctors agreed between September 2022 and November 2023 that Plaintiff could not perform the essential functions of her job and points to Plaintiff's deposition testimony, where she agreed with the doctor's findings and acknowledged she could not perform essential duties of her job.[150]

Defendant also points out that Dr. Oberlander's September 25, 2023 affidavit stated that "following appropriate recovery from surgery" Plaintiff could have recovered and performed her duties, but provided no date by which this would occur. Defendant argues it was not required to allow Plaintiff an indefinite period to recover before terminating her.[151] Furthermore, the Defendant argues it was incapable of reassigning Plaintiff to the communications department. Defendant relies on deposition testimony from Captain Bergeron, Captain Scivicque, and Diana McMahon of HPD Human Resources, who state that a police officer and a communications officer are different job classifications.[152] Defendant argues that HPD employees are categorized as "civil service," and, as such, cannot transfer between different job classifications.[153] Defendant also represents that, even if light duty were available, it could not assign Plaintiff to light duty due to her ineligibility to return to work.[154] Finally, Defendant argues it did engage in an interactive process with Plaintiff concerning reasonable accommodations, and that Plaintiff's doctors notes never requested that she be allowed to leave her house without restriction.[155]

---

[149] R. Doc. 66-5, at 21-23.
[150] R. Doc. 66-8, Exh. 64, at 43:4-11, 48:4- 17, 58:17-24.
[151] R. Doc. 70 at p. 9.
[152] *Id.*
[153] R. Doc. 66-1 at ¶ ¶ 230, 231, 234.
[154] R. Doc. 70 at p. 6.
[155] R. Doc. 66-2 at pp. 6-7, 16.

### B.    Legal Analysis

Because the analysis of a claim under the ADA mirrors that of a claim under the LEDL, the Court will analyze them both at the same time.[156] Discrimination under the ADA includes "not making *reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[157] This type of ADA discrimination claim is referred to as a "failure to accommodate" claim. The elements of an ADA failure to accommodate claim are that (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the employer; and (3) the employer failed to make (denied) reasonable accommodations for such known limitations.[158]

Notably, the enumerated elements above do not include proof of an adverse employment action, such as a demotion or a termination—an adverse employment action of this nature is not a required element of an ADA failure to accommodate claim. Rather, a failure to accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered an adverse employment action.[159] The "adverse" conduct by the employer that triggers an ADA failure

---

[156] *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (applying the ADA's standard for disability discrimination to a claim asserted under the LEDL and ADA); *Leaumont v. City of Alexandria*, 582 F. App'x 407, 410–11 (5th Cir. 2014) (applying the same standard to a claim for disability discrimination under the LEDL and ADA); *Sutherland v. Edison Chouest Offshore, Inc.*, 2020 WL 5436654, at *14 (E.D. La. Sept. 10, 2020) (citing *Barton v. Checkers Drive-In Restaurants, Inc.*, 2011 WL 1193061, at *3 (E.D. La. Mar. 28, 2011)) ("Louisiana's disability discrimination protections are based on the ADA, and the Court's analyses under the LEDL and the ADA are the same.").
[157] *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citing § 12112(b)(5)(A) (emphasis added)).
[158] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021).
[159] *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014).

to accommodate claim is the employer's denial of the employee's reasonable accommodation request.[160]

The "reasonableness" of the requested accommodation is a crucial part of the plaintiff's prima facie case and therefore she bears the burden of proof at trial as to reasonableness.[161] To make reasonable accommodation the ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . ."[162] Under the ADA, a reasonable accommodation may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.[163]

Furthermore, the ADA's implementing regulations define a reasonable accommodation as

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; *or*
> (ii) Modifications or adjustments to the work environment...that enable an individual with a disability who is qualified *to perform the essential functions* of that position; *or*
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to *enjoy equal benefits and privileges* of employment as are enjoyed by its other similarly situated employees without disabilities.[164]

---

[160] *See Windhauser v. Board of Supv. for La. State Univ.*, 360 Fed. Appx. 562, 566 (5th Cir. 2010).
[161] *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).
[162] *LHC Grp.*, 773 F.3d at 698 (citing 29 C.F.R. § 1630.2(o) (1)(ii)).
[163] 42 U.S.C. § 12111(9).
[164] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013) (citing 29 C.F.R. § 1630.2(o)(1)).

"The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[165]

An implicit requirement of the plaintiff's prima facie case for a failure to accommodate claim is that she demonstrates she actually requested the accommodation that she claims to have been denied. Thus, at trial, the plaintiff must demonstrate not only that the accommodation at issue is reasonable but also that she requested it.[166] After all, if the employee fails to request an accommodation the employer cannot be held liable for failing to provide it.[167] "[O]nce the employee presents a request for an accommodation, the employer is required to engage in [an] interactive process so that together they can determine what reasonable accommodations might be available."[168]

Assuming the plaintiff has satisfied all of the elements of her prima facie case for the failure to accommodate, the burden then shifts to the employer to demonstrate that the requested reasonable accommodation would impose an undue hardship on the operation of the employer's business.[169] The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of factors such as the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.[170]

With these precepts in mind, the Court now turns to the three required elements

---

[165] *LHC Grp.*, 773 F.3d at 698 (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)).
[166] *Clark*, 952 F.3d at 587 (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)).
[167] *Id.* at 587 n.71 (citing *Taylor*, 93 F.3d at 165).
[168] *E.E.O.C. v. Chevron Philips*, 570 F.3d 606, 622 (5th Cir. 2009).
[169] *Chevron Phillips Chem.*, 570 F.3d at 614 (citing 42 U.S.C. § 12112(b)(5)(A)).
[170] 42 U.S.C. § 12111(10)(A)-(B)(iv).

of an ADA failure to accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the employer; and (3) the employer failed to make (denied) reasonable accommodations for such known limitations.[171]

> **1.    Plaintiff's failure to accommodate claims regarding indefinite leave fails because indefinite leave is not a reasonable accommodation.**

Plaintiff has failed to demonstrate a prima facie case of failure to accommodate as she has not put forth any evidence showing Defendant failed to provide a reasonable accommodation by not offering her indefinite leave to recover from her surgery. Plaintiff claims Defendant should have accommodated her disability by allowing her a "reasonable time" to recover from surgery, which would allow her to perform the essential functions of her job.[172] An employer may offer a reasonable accommodation to a disabled employee in several ways. Courts in this circuit have consistently held that "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."[173]

Plaintiff claims Defendant could have reasonably accommodated her disability in several ways. First, Plaintiff asserts Defendants could have accommodated her by allowing her "a reasonable time to recover" from her surgery.[174] To support this assertion, she points to an affidavit from Dr. Oberlander, executed on September 15, 2025, in which he states "[i]n my medical opinion, following appropriate recovery from surgery, Jennifer

---

[171] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021).

[172] R. Doc. 68-1 at ¶ 172 (citing R. Doc. 68-7).

[173] *Moss*, 851 F.3d at 418 (quoting *Deleval v. PTech Drilling Tubulars*, LLC, 824 F.3d 476, 481 (5th Cir. 2016)); *see also Amsel v. Texas Water Development Bd.*, 464 Fed.Appx 395, 400 (5th Cir. 2012) ("indefinite leave is not a reasonable accommodation."); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759-60 (5th Cir. 1996) ("[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect.").

[174] R. Doc. 68 at p. 5.

Payne could have recovered and performed the essential duties and responsibilities of a police officer."[175] However, neither Plaintiff nor her doctor provide even an estimated timeline for how long this recovery might take. Such an extended period of leave with no specified return date is not a reasonable accommodation, and Plaintiff has failed to show she could perform the essential functions of her job without this indefinite absence.[176] Dr. Oberlander's September 25, 2023 Job Analysis stated that Plaintiff would likely have permanent restrictions that would prevent her from performing the essential functions of her job,[177] and Plaintiff agreed with this analysis.[178] There is no genuine dispute of material fact as to whether Plaintiff or her doctor provided a date for her to return to work, or whether Defendant could perform the essential functions of her job at the time of her dismissal. As a result, this requested accommodation is not reasonable, and her claim for failure to accommodate for refusing to grant her indefinite leave fails.

> **2.    Plaintiff's failure to accommodate claims regarding light duty fails because light duty assignment was not a reasonable accommodation.**

Similarly, Plaintiff has failed to demonstrate a prima facie case of failure to accommodate her by not assigning her to light duty as she has not put forth evidence showing such an accommodation was reasonable. Plaintiff argues Defendant could have reasonably accommodated her by assigning her to a light duty position between September 2, 2022 and December 18, 2023.[179] However, the ADA does not require an employer to eliminate the essential functions of a job as a reasonable accommodation.[180]

---

[175] R. Doc. 68-1 at ¶ 172 (citing R. Doc. 68-7).
[176] *See Amsel.*, 464 Fed.Appx at 400 (5th Cir. 2012) ("indefinite leave is not a reasonable accommodation.").
[177] R. Doc. 66-7 at Exh. 60.
[178] R. Doc. 66-8, Exh. 64, at 43:4-11, 48:4- 17, 58:17-24.
[179] R. Doc. 68 at p. 8.
[180] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

Plaintiff's requested light duty assignment would be unreasonable as it would eliminate essential functions of her job as a police officer. As a police officer, Plaintiff's duties included conducting traffic stops, securing crime scenes, engaging and subduing perpetrators, utilizing a firearm, accessing structures, and assisting officers/civilians to safety.[181] Furthermore, HPD's description of the duties of a police officer demonstrate that Plaintiff's job requires her to carry between 10 and 150 pounds 6-33% of the day and requires employees to spend a significant amount of time walking and standing.[182] Plaintiff was incapable of performing these functions. Dr. Oberlander's job analysis form dated September 25, 2023, stated that Plaintiff should not lift more than 35-40 pounds, and that she should experience minimal bending and twisting, walk minimally, and stand for no more than 2 hours at a time without a break.[183] Dr. Christner, a city doctor, agreed with Dr. Oberlander's analysis.[184] Plaintiff agreed with the doctor's findings and acknowledged she could not perform essential duties.[185] As a result, any potential light duty assignment would have had to eliminate these essential functions of her job. However, courts in this circuit have repeatedly stated that eliminating the essential functions of a job is not a reasonable accommodation.[186] Accordingly, such a request for light duty assignment is not a reasonable accommodation and Plaintiff has not demonstrated a prima facie case of failure to accommodate under the ADA.

---

[181] R. Doc. 66-5, at 21-23.
[182] R. Doc. 66-5 at Exh. 18B at COH_JP-000654).
[183] R. Doc. 66-7 at Exh. 60.
[184] R. Doc. 66-8 at Exh. 63.
[185] R. Doc. 66-8, Exh. 64, at 43:4-11, 48:4- 17, 58:17-24.
[186] See *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)).

### 3.    Plaintiff's failure to accommodate claim regarding lifting sick leave restrictions fails because such an accommodation was not reasonable.

Plaintiff has failed to demonstrate a prima facie case of failure to accommodate as she has not put forth any evidence showing Defendant failed to reasonably accommodate her by denying her requests to leave her home. She asserts that Defendant should have allowed her to leave her house without notifying human resources or her superiors while on sick leave, and that by preventing her from leaving her home, Defendant may have delayed her healing.[187] Of course, to make a prima facie case of failure to accommodate, the Plaintiff must show that Defendant refused to grant a requested accommodation. A reasonable accommodation is defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . ."[188] The burden is on the Plaintiff to request such an accommodation.[189]

Plaintiff has not produced evidence showing Defendants denied her requests to leave her house. While Payne claims that the doctors notes she submitted to Defendant requested that she be allowed to leave her house as she pleased without notifying the city, these letters do not make such a request.[190] Rather, these letters merely request that Defendant allow Plaintiff to leave her house.[191] Plaintiff fails to recognize that HPD's General Order regarding sick leave allows employees to leave their homes for a myriad of reasons, including "when the employee receives written notification from Human

---

[187] R. Doc. 68 at pp. 6, 8, 10; R. Doc. 68-6; and R. Doc. 68-7, at p. 2 ¶ 20.
[188] *LHC Grp.*, 773 F.3d at 698 (citing 29 C.F.R. § 1630.2(o) (1)(ii)).
[189] *Clark v. Champion National Security, Inc.*, 952 F.3d 570, 587 (5th Cir. 2020).
[190] R. Doc. 66-2 at pp. 6-7, 16.
[191] *Id.*

Resources, the Chief or his designee."[192] Furthermore, both the city attorney and HPD human resources reminded Plaintiff that she could seek approval for activities that may aid her recovery.[193] Payne does not offer any evidence demonstrating that she was not allowed to leave her "place of confinement," as she claims. Plaintiff did not request that she be allowed to leave her house without notifying HPD until November 27, 2023; the City responded to this request by saying that Plaintiff could leave her house so long as she followed proper procedure. Simply put, the facts do not demonstrate that HPD policy prevented Plaintiff from leaving her home. Rather, they show a policy that requires all officers on sick leave to notify the city before engaging in activities not pre-approved. Accordingly, she has not shown that Defendant failed to grant her a reasonable accommodation, and Defendant is entitled to judgment as a matter of law.

Furthermore, she claims that lifting the notification requirement on November 27, 2023, would aid in her recovery,[194] but does not explain how. City policy allowed Plaintiff to leave her house so long as she notified human resources, the chief, or the chief's designee before doing so.[195] It is unclear how an adjustment in this policy qualifies as a reasonable accommodation of Plaintiff's disability. Lifting the notification requirement would not help her perform the essential functions of her job, make her life at work easier, or allow her to enjoy equal benefits and privileges of employment.[196] While it may be inconvenient for Plaintiff to notify her supervisors when she wishes to leave her home, Plaintiff has failed to show that this requirement inhibited her from performing her job or would benefit her potential return to work in any way. Accordingly, she has failed to

---

[192] R. Doc. 66-4 at Exh. 10 § E.
[193] R. Doc. R. Doc 66-2 at p. 16.
[194] R. Doc. 68 at p. 10.
[195] R. Doc. 66-4 at Exh. 10 § E.
[196] See. 29 C.F.R. § 1630.2(o)(1).

show that such an accommodation was reasonable and has failed to establish a prima facie case of discrimination by failure to accommodate.

### 4.    Plaintiff's request for reassignment

Plaintiff has failed to demonstrate a prima facie case of failure to accommodate as she has not put forth any evidence showing Defendant could have accommodated her by reassigning her to another position. Plaintiff asserts also that Defendant could have accommodated her disability by reassigning her to the communications department. Reassigning an employee to a different job can be a reasonable accommodation, but "the plaintiff bears the burden of proving that an available position exists that he was qualified for and could with reasonable accommodations perform."[197] For example, in *Moss v. Harris County*, the Fifth Circuit affirmed a district court's granting of summary judgment on an ADA discrimination claim because the complainant failed to identify a vacant position that his employer could assign him to in order to accommodate his disability.[198]

Likewise, Plaintiff has failed to carry this burden. While she makes a conclusory assertion that Defendant could have assigned her to a position within HPD's communications department to accommodate her disability,[199] she offers no evidence demonstrating an available position in the communications department existed or that a transfer was possible. On the other hand, Defendant provides evidence demonstrating that such a reassignment was not possible.[200] Defendant relies on deposition testimony from Captain Bergeron, Captain Scivicque, and Diana McMahon of HPD Human Resources, which clarifies that a police officer and a communications officer are different

---

[197] Moss, 851 F.3d at 418 (quoting *Jenkins v. Cleco Power*, LLC, 487 F.3d 309, 315 (5th Cir. 2007)); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").
[198] *Id.* at 419.
[199] R. Doc. 68-1 at ¶ 232.
[200] R. Doc. 66-1 at ¶¶ 228-238.

job classifications.[201] As HPD employees are categorized as "civil service," they cannot transfer between different job classifications.[202] Furthermore, even if Defendant could transfer Plaintiff to the communications department, Plaintiff would still have to demonstrate an ability to carry out physical arrests, as this is an essential function of a communications officer.[203] Plaintiff has put forth no evidence showing she could carry out this function. No genuine dispute of material fact exists as to whether Defendant could assign Plaintiff to the communications department. As a result, reassignment is not a reasonable accommodation, and the Court will grant summary judgment for Defendant on Plaintiff's ADA and LEDL claim based on Defendant's failure to reassign her.

### 5.    Failure to engage in interactive process

Finally, Plaintiff has not shown Defendant failed to engage in a good-faith, interactive process because it failed to find a reasonable accommodation for Plaintiff and did not follow up with her personal physician, Dr. Oberlander, after he submitted his job analysis report on September 25, 2023. "[O]nce the employee presents a request for an accommodation, the employer is required to engage in [an] interactive process so that together they can determine what reasonable accommodations might be available."[204] In *Chevron v. Phillips*, the Fifth Circuit reversed summary judgment on a failure to accommodate claim, holding that the employer's refusal to discuss the accommodation with Plaintiff could lead a reasonable jury to find that the employer violated the ADA.[205]

---

[201] *Id.*
[202] R. Doc. 66-1 at ¶ ¶ 230, 231, 234.
[203] R. Doc. 66-1 at ¶ 237.
[204] *E.E.O.C. v. Chevron Philips*, 570 F.3d 606, 622 (5th Cir. 2009).
[205] *Id.*

However, Plaintiff does not offer any evidence showing that Defendant refused to engage with her regarding her reasonable accommodation. On the other hand, Defendant provides evidence showing that it reached out to multiple doctors, including Plaintiff's personal physician, in an attempt to determine whether Plaintiff could perform the essential functions of her job.[206] Furthermore, Defendant held a hearing on November 20, 2023 concerning her disability and whether she could return to work.[207] Such facts do not show bad-faith or a refusal to engage in an interactive process. Accordingly, there is no genuine dispute of material fact as to whether Defendant engaged in a good faith, interactive process to find a reasonable accommodation for Plaintiff, and Defendant is entitled to judgment as a matter of law.

## III.   Count Four: Defendant is entitled to summary judgment on Plaintiff's retaliatory demotion claim under Title VII and her wrongful and retaliatory termination claims under Title VII and LEDL.[208]

### A.   Factual Background

Plaintiff alleges that Defendant violated Title VII by demoting her on May 25, 2023, and later terminating her on December 18, 2023 in retaliation for her filing a charge of discrimination against HPD with the EEOC on May 3, 2023.[209]  She further claims she was wrongfully terminated on December 18, 2023 because of her disability in violation of Title VII.[210]

The following facts are undisputed. Plaintiff was unable to work on September 2, 2022 and her absence was designated as sick leave.[211] HPD General Order No. 140 states: "on fifth (5+) absence personnel will be required to report to the city physician and

---

[206] R. Docs. 66-7 at Exh. 58; 66-8 at Exhs. 61-63.
[207] R. Doc. 66-8 at Exh. 64.
[208] The Court previously dismissed Plaintiff's LEDL retaliatory demotion claim. R. Doc. 36 at p. 23.
[209] R. Doc. 68 at pp. 11, 13.
[210] R. Doc. 81 at ¶ 123.
[211] R. Docs. 66-1 at ¶¶ 12, 14 (citing R. Doc. 66-4 at Exh. 5 at 10:22-11;17, 12:8-19); 68-1 at ¶ ¶ 12, 14.

provide required documentation."[212] As Plaintiff's absence was her 32nd instance of sick leave and 7th non-consecutive sick leave period, she was required to see the city physician before returning to work in any capacity.[213] Plaintiff did not see the city doctor prior to September 5, 2022.[214] HPD General Order 140 further states: "Sick leave shall begin upon notification…and continue until the employee returns to work."[215] Plaintiff took a cruise on September 5-10, 2022.[216] After this trip, Lieutenant David Mauro conducted an Internal Affairs investigation into whether Plaintiff violated sick leave policy; the investigation found Plaintiff did violate the policy.[217]

On March 18, 2023, while on sick leave, Plaintiff attended a fundraiser without authorization.[218] Once again, Lieutenant Mauro conducted an investigation finding Plaintiff violated the sick leave policy.[219]

Plaintiff filed a charge of discrimination with the EEOC on May 3, 2023, and the City received notice of the charge on May 9.[220] On May 4, Police Chief Bergeron, Captain Scivicque, and Captain Avery Roshner attended a meeting with the Office of State Examiners to discuss investigation findings regarding Plaintiff's sick leave policy violations.[221] On May 25, 2023, Plaintiff was demoted from the rank of Probationary Lieutenant to Police Officer for two years.[222] On December 18, 2023, Plaintiff was removed

---

[212] R. Docs. 66-1 at ¶ 25 (citing R. Doc. 66-4 at Exh. 10 at § F(3)); 68-1 at ¶ 25.

[213] R. Docs. 66-1 at ¶ 24 (citing R. Doc. 66-4 at Exh. 7 at ¶¶25-28); 68-1 at ¶ 24.

[214] R. Docs. 66-1 at ¶ 30 (citing R. Doc. 66-4 at Exh 11 at COH_JP-000707-000708); 68-1 at ¶ 30.

[215] R. Docs. 66-1 at ¶ 36 (citing R. Doc. 66-4 at Exh. 10 at § (B)); 68-1 at ¶ 36.

[216] R. Docs. 66-1 at ¶ 37 (citing R. Doc. 66-4 at Exh. 8, Exh. 11 at COH_JP-00708; R. Doc. 66-9 at Exh. 69, Payne at 68:23-69:2); 68-1 at ¶ 37.

[217] R. Docs. 66-1 at ¶¶ 53, 54, 59 (citing 66-4 Exh. 13, Exh. 14A at COH_JP-000279; R. Doc. 66 at 66-9 at Exh. 69, Mauro at 7:4-16); 68-1 at ¶ ¶ 53, 54, 59.

[218] R. Docs. 66-1 at ¶ 99 (citing R. Doc. 66-6 at Exh. 40, at 6:19-25); 68-1 at ¶ 99.

[219] R. Docs. 66-1 at ¶ ¶ 102, 106 (citing R. Doc. 66-6 at Exhs. 37, 38; R. Doc. 66-8 at Exh. 68, Mauro at 7:4-16); 68-1 at ¶¶ 102, 106.

[220] R. Docs. 66-1 at ¶¶ 127, 128 (citing R. Doc. 66-7 at Exhs. 46, 47); 68-1 at ¶ ¶ 127, 128.

[221] R. Docs. 66-1 at ¶ 120 (citing R. Doc. 66-4 at Exh. 6, ¶ ¶ 15-16); 68-1 at ¶ 120.

[222] R. Docs. 66-1 at ¶ 129 (citing R. Doc. 66-7 at Exh. 48A-B); 68-1 at ¶ 129.

from service.[223] The Notice of Removal from Service stated that, in accordance with Louisiana Revised Statute 33:2560, Section A.13, an employee may be removed due to "the development of any defect or physical condition which precludes the employee from properly performing the duties of his position."[224]

Plaintiff claims that while she was demoted for her violation of sick leave policy, officers Tom Mushinsky and Vince Jones violated sick leave policy but received no discipline.[225]

Again, a plaintiff may use either direct or circumstantial evidence to prove a case of discrimination under Title VII. If a plaintiff relies on circumstantial evidence, the *McDonnell Douglass* burden shifting framework applies. As Plaintiff relies on circumstantial evidence, the court will analyze these claims under *McDonnell Douglass*. If Plaintiff establishes a prima facie case, the burden then shifts to the defendant to state legitimate, non-retaliatory reasons for its decision; following this response, the burden shifts back to the Plaintiff to show Defendant's stated reason is pretext for retaliation.[226]

**B.    Legal Analysis**

**1.    Retaliatory Demotion under Title VII**

**a.    Prima Facie Case**

Title VII prohibits an employer from taking adverse employment action against an employee because she engages in protected activity.[227] "To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in an activity protected under

---

[223] R. Doc. 81, uncontested material facts, at ¶ 123.
[224] *Id.* at ¶ 124.
[225] R. Doc. 66-10, at Exh. 72, at Interrog. Nos. 16-17.
[226] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).
[227] Joseph v. Phillips, No. 13-5254, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).

the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action."[228]

Defendant disputes only the third prong, claiming there is no causal connection between the activity and the adverse action.[229] A causal link between the adverse employment action and the protected activity can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[230] "At the prima facie stage, a Plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."[231] Courts have held that a time lapse of up to four months between employee's protected activity and employer's adverse action may be sufficiently close to establish a causal connection,[232] while a five month lapse without other evidence of retaliation does not.[233]

Defendant received notice of Plaintiff's EEOC complaint on May 9, 2023 and officially demoted Plaintiff on May 25, 2023.[234] As courts in this circuit have found a four month period between protected activity and adverse action sufficient to find a causal connection, the two week period between Plaintiff's complaint and her demotion likewise establishes this connection.[235] Accordingly, Plaintiff has made a prima facie case of retaliatory demotion.

---

[228] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007).
[229] *Id.*
[230] *Abbood v. Texas Health and Human services Comm.,* 783 Fed. Appx. 459 (5th Cir. 2019) (citing *Garcia v. Professional Contract Servs.,* Inc., 983 F.3d 236, 243 (5th Cir. 2019)).
[231] *Garcia v. Professional Contract services, Inc.,* 983 F.3d 236, 243 (5th Cir. 2019).
[232] *Evans v. Houston,* 246 F.3d 344, 354 (5th Cir. 2001).
[233] *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 472 (5th Cir. 2002).
[234] R. Doc. 66-1 at ¶ ¶ 127, 128 (citing R. Doc. 66-7 at Exhs. 46, 47); R. Doc. 66-1 at ¶ 129 (citing R. Doc. 66-7 at Exh. 48A-B).
[235] *Evans,* 246 F.3d at 354.

### b. Burden Shifts to Defendant to provide reasons for the adverse employment action.

When a plaintiff makes a prima facie claim of retaliation, the burden shifts to the defendant to demonstrate it had non-retaliatory reasons for demoting Plaintiff.[236] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[237] The defendant must articulate a legitimate, nondiscriminatory purpose or nonretaliatory reason for its employment action.[238] Defendant has provided non-discriminatory reasons for demoting Plaintiff, claiming HPD demoted her due to her violation of sick leave policy.[239] Furthermore, Defendant held a meeting with the Office of State Examiners on May 4, 2023, concerning discipline for her sick leave violations, which it claims demonstrates that it had formed a decision to discipline Plaintiff before receiving notice of her EEOC charge.[240] Defendant has articulated neutral reasons for employment actions taken against Plaintiff and, accordingly, has met its burden of production.

### c. Burden shifts to Plaintiff to demonstrate defendant's reasons for the adverse employment action are pretext for retaliation.

As Defendant offered non-retaliatory reasons for its adverse employment action, the burden shifts back to Plaintiff, who must produce evidence showing Defendant's proffered reasons are pretext.[241] At summary judgment, Plaintiff must point to additional evidence that creates a genuine issue of material fact that either (1) defendant's reason is not true, but is instead a pretext for discrimination or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the

---

[236] *Lemaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007).
[237] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[238] I*d.*
[239] R. Doc. 66-2 at p. 13.
[240] R. Doc. 66-12 at Exh. 75, Bergeron at 144:11-12, 144:23-145:19, 158:4-13, 159:9-19, and 220:10-221:8.
[241] *Lemaire*, 480 F.3d at 388-89.

plaintiff's protected activity or characteristic.[242] In other words, Plaintiff "must show a conflict in substantial evidence" on the question of whether Defendant would not have demoted Plaintiff "but for" the protected activity.[243] A "'very close'" temporal proximity is sufficient to establish the 'causal connection' elements of a prima facie case, but it is insufficient to demonstrate pretext."[244]

Plaintiff offers no evidence in response showing that Defendant's stated reasons for demoting Plaintiff amounted to pretext. While she claims officers Jones and Mushinsky violated sick leave policy with no repercussions, she offers no competent summary judgment evidence supporting this argument.[245] Plaintiff acknowledges that she did not know for a fact whether Jones was authorized to leave his home on sick leave[246] and offers no evidence showing that Mushinsky violated sick leave policy. Plaintiff's only other response to Defendant's non-discriminatory reasons for demoting her is to point to the temporal proximity between her EEOC complaint and her discipline.[247] While this short time period creates a prima facie case of retaliation, it alone does not show Defendant's stated reasons for demoting Plaintiff were pretextual or demonstrate that "but for" Defendant's retaliatory intent, it would not have demoted Plaintiff.[248] Because Plaintiff failed to create a genuine issue of material fact that Defendant's stated reasons for taking adverse employment action were pretextual or that a retaliatory motive played any role in Defendant's decision to discipline her, her retaliatory demotion claim fails as a matter of law.

---

[242] *Hebert v. Ascension Parish School Board*, 396 F.Supp.3d 686, 706 (M.D. La. May 2, 2020).
[243] *Avvood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459, 463 (5th Cir. 2019) (citing *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).
[244] *Lyons v. Katy Independent School District.*, 964 F.3d 298, 306-7 (5th Cir. 2020).
[245] *See supra* Section I.B.3.
[246] R. Doc. 66-2 at p. 16.
[247] R. Doc. 68-1 at ¶ 129.
[248] *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).; *Lyons*, 964 F.3d at 306-7.

## 2.    Retaliatory Discharge under Title VII and the LEDL

In addition, Plaintiff has failed to demonstrate a prima facie case of retaliatory termination under Title VII or the LEDL as she has not shown a causal connection between her protected activity and the adverse employment action. Plaintiff claims she was fired on December 18, 2023 in retaliation for filing her EEOC complaint on May 3, 2023. Claims under the LEDL are subject to the same analysis as claims under Title VII.[249] In *Evans v. Houston*, the Fifth Circuit found that a five-month lapse between protected activity and adverse employment action was not sufficient without other evidence to demonstrate the required causal connection.[250] In this case, Defendant terminated Plaintiff over seven months after her EEOC complaint; the period between Plaintiff's EEOC charge and the adverse employment action is too long to show a causal connection on its own.[251]

Moreover, even if this temporal proximity alone could create a prima facie case, Defendant offers a non-discriminatory reason for terminating Plaintiff—her inability to perform the essential functions of her job.[252] Plaintiff's personal physician, Dr. Oberlander, concluded that Plaintiff would have permanent limitations and could not perform the essential duties of a police officer.[253] In response, Plaintiff points to no evidence demonstrating such action was retaliatory except the conclusory allegation that Defendant terminated her for her disability.[254] This assertion alone does not create a disputed issue of material fact.[255] Accordingly, Plaintiff has failed to show a causal

---

[249] *Decorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).
[250] 246 F.3d 463, 472 (5th Cir. 2001).
[251] R. Doc. 66-1 at ¶ 214.
[252] R. Doc. 66-2 at p. 21.
[253] R. Docs. 66-1 at ¶ 167 (citing R. Doc. 66-7 at Exh. 60).
[254] R. Doc. 68-1 at ¶ 214.
[255] See *Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 487 (5th Cir. 2004).

connection between her protected activity and her termination, and her claim fails as a matter of law.

### 3.    Wrongful Termination under Title VII and the LEDL

To establish a prima facie wrongful termination claim under Title VII, a plaintiff must prove she: "(1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class."[256]

Plaintiff has failed to establish that she was qualified for the job of police officer, as she does not put forth any evidence showing she could perform the essential functions of the job at the time of her termination. Dr. Oberlander's job analysis form dated September 25, 2023, stated that Plaintiff would face permanent limitations due to her disability and that she would not be able to perform essential job duties for a "likely permanent" duration.[257] He further stated Plaintiff should not lift more than 35-40 pounds, and that she should experience minimal bending and twisting, walk minimally, and stand for no more than 2 hours at a time without a break.[258] Dr. Christner, a city doctor, agreed with Dr. Oberlander's analysis.[259] Furthermore, HPD's description of the duties of a police officer demonstrate that Plaintiff's job requires her to carry between 10 and 150 pounds 6-33% of the day and requires employees to spend a significant amount of time walking and standing.[260] Plaintiff agreed with the doctor's findings and acknowledged she could not perform essential duties of the job.[261] There is no dispute of

---

[256] Willis v. Cleco Corp., 749 F.3d 314, 320 (5th Cir. 2014).
[257] R. Doc. 66-7 at Exh. 60.
[258] R. Doc. 66-7 at Exh. 60.
[259] R. Doc. 66-8 at Exh. 63.
[260] R. Doc. 66-5 at Exh. 18B at COH_JP-000654).
[261] R. Doc. 66-8, Exh. 64, at 43:4-11, 48:4- 17, 58:17-24.

material fact as to whether Plaintiff could perform the essential functions of her job at the time of her dismissal. Accordingly, she has failed to make a prima facie case of wrongful termination under Title VII.

Assuming Plaintiff had established a prima facie case of wrongful termination, the burden would then shift to Defendant to offer a non-discriminatory reason for terminating Plaintiff.[262] Defendant offers such a reason, stating that Plaintiff could not perform the essential duties of a police officer.

After Defendant offers a non-discriminatory reason for taking adverse employment action, the burden would then return to the Plaintiff to show that Defendant's stated reason amounts to pretext.[263] However, Plaintiff fails to offer any evidence showing that Defendant's stated reason for terminating Plaintiff, that she could not perform the essential functions of her job, is false, or that an improper motive was a consideration in terminating her. Once again, Plaintiff merely points to the temporal proximity between her EEOC complaint and her eventual termination.[264] This proximity does not call into doubt Defendant's stated reason for terminating Plaintiff. As a result, Plaintiff's wrongful termination claim fails, and defendant is entitled to judgment as a matter of law.

<b><u>CONCLUSION</u></b>

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**New Orleans, Louisiana, this 6th day of November, 2025.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[262] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994) (applying *McDonnell Douglas* test).
[263] *Id.*
[264] R. Doc. 68-1 at ¶ 214.